Civil action, heard on case agreed. Plaintiff sued defendant for $422.41, purchase price of oil sold and delivered to defendant as per contract, etc.
Defendant admits owing plaintiff the amount stated, a balance due for oil sold and delivered, but sets up a counterclaim for something over $400 arising by reason of plaintiff's wrongful failure to deliver two *Page 222 
carloads of oil at the time and place required by the contract between them, whereby defendant was forced to buy a specified amount of oil on the local market at an increased cost, etc. The facts admitted as relevant to this counterclaim are very well stated in one of the briefs, as (278) follows:
"That on 25 November, 1905, plaintiff and defendant, Charlotte Consolidated Construction Company, entered into a contract whereby plaintiff agreed to sell and deliver to defendant, Charlotte Consolidated Construction Company, and the defendant, Charlotte Consolidated Construction Company, agreed to purchase from the plaintiff Solar Gas Oil for use in defendant's plant in the city of Charlotte. The price was to be 5 1/4 cents per gallon f. o. b. Charlotte, N.C. in lots not less than 160 barrels nor more than 320 barrels, unless otherwise agreed upon. Five days written notice to be given plaintiff or its representatives, at 916 Harrison Building, Philadelphia, Pa., before each delivery was required; payment to be made on the 15th day of each month, at plaintiff's Pittsburg office, for all oil delivered during the preceding month, and liability of plaintiff to cease when any shipment was delivered to the railroad. That said contract was carried out by the parties, until 17 October, 1906, at which time defendant, Charlotte Consolidated Construction Company, telegraphed plaintiff to ship two cars of oil on the 20th day of said month, instead of one, which telegram was subsequently confirmed by letter from defendant, Charlotte Consolidated Construction Company, to plaintiff, and plaintiff, in accordance with said telegram, on 20 October, 1906, delivered to the Central Railroad of New Jersey the two tank cars of oil, consigned to defendant, Charlotte Consolidated Construction Company, Charlotte, N.C. and took bill of lading for the same and sent the bill of lading to the defendant, Charlotte Consolidated Construction Company, Charlotte, N.C.; that on account of an error committed by the railroad company, said oil was never delivered, but was carried to Courtland, New York, and discharged in the tanks of two other persons; but the error was not made known to plaintiffs till 2 November, 1906, when defendant, Charlotte Consolidated Construction Company, by its president, E. D. Latta, wired plaintiff that the oil had not arrived, and ordered shipped at once two other cars of oil, which were shipped on 2 November, 1906, according to instructions of defendant, Charlotte Consolidated Construction Company.
Before the second shipment of oil arrived at Charlotte, defendant's (279) supply of oil gave out, and it was compelled to buy 11,429 gallons of kerosene oil from the Standard Oil Company, at the price of $1,108.78, which oil so used by the defendant refining company in the manufacture of its gas was worth only $702.26, as compared with the value of the Solar Gas Oil for like purposes, incurring a loss to defendant of $406.52. *Page 223 
"Defendant admits that there is due plaintiff the sum of $422.41, with interest from 19 January, 1907, subject to such set-off or counterclaim (if any) as the defendant ought to have credit for by reason of the failure to deliver the two cars or tanks of oil which were, by error of the Central Railroad of New Jersey, carried to Courtland, New York, and not delivered to defendants.
"The question of the amount sought to be recovered being eliminated by the defendant's admission, the inquiry before the court is, whether or not the loss sustained by defendant, being the relative difference in the value of Solar Oil and keresene [kerosene] oil, is a proper counterclaim against the plaintiff."
The court below being of opinion that on the facts there was no counterclaim available to defendant, entered judgment for plaintiff, and defendant excepted and appealed.
After stating the case: As the Court understands the facts, there has been no charge made against defendant for the price of oil that was shipped to other parties by mistake of the railroad company and its agents. The defendant bases its counterclaim on the fact there was a failure to deliver the two car-loads of oil at the time and place specified; that this failure was in breach of the contract between the parties, and the consequences are properly chargeable to plaintiff, and this by reason of certain clauses in the agreement, as follows:
"That plaintiff sold and agreed to deliver to defendant for use in defendant's plant at Charlotte, N.C. maximum 225,000, minimum 175,000 gallons Solar Gas Oil at 5 1/4 cents per gallon, f. o. b. Charlotte, N.C. by tank car, at tank located at Charlotte, N.C. in lots of not less than 160 barrels nor more than 320 barrels, unless otherwise (280) agreed upon. . . .
"Five days written notice to be given representative of party of first part (plaintiff) at 916 Harrison Building, Philadelphia, Pa., before each delivery is required. . . . .
"Liability of first party (plaintiff) ceases when shipment is delivered to railroad company."
The position being that the last clause, "Liability of the first party ceases when shipment is delivered to railroad company," is entirely irreconcilable with the two former clauses, is repugnant to the general purport and intent of the contract, and under the doctrine approved inJones v. Casualty Co., 140 N.C. 262, and other cases of like import, the same should be set aside and not allowed to affect in any way the rights of the contracting parties. But on the facts in evidence the Court *Page 224 
is of opinion that defendant's counterclaim may not be brought within the principle.
In Railroad v. Railroad, 147 N.C. 382, the Court, speaking to the controlling rule in the interpretation of contracts, said: "It is well recognized that the object of all rules of interpretation is to arrive at the intention of the parties as expressed in the contract, and that in written contracts which permit of construction this intent is to be gathered from a perusal of the entire instrument. In Page on Contracts, sec. 1112, we find it stated: `Since the object of construction is to ascertain the intent of the parties, the contract must be considered as an entirety. The problem is not what the separate parts mean, but what the contract means when considered as a whole.'"
And in Davis v. Frazier, 150 N.C. 451, the Court, referring to the principle recognized in Jones v. Casualty Co. and other cases of like kind, said: "It is an undoubted principle that a `subsequent clause irreconcilable with a former clause and repugnant to the general purpose and intent of the contract will be set aside.' This was expressly held in Jones v. Casualty Co., 140 N.C. 262, and there are many decisions with us to like effect; but, as indicated in the case referred to and the authorities cited in its support, this principle is in subordination to another position, that the intent of the parties as embodied in (281) the entire instrument is the end to be attained, and that each and every part of the contract must be given effect, if this can be done by any fair or reasonable interpretation; and it is only after subjecting the instrument to this controlling principle of construction that a subsequent clause may be rejected as repugnant and irreconcilable.Jones v. Casualty Co., supra; Lawson on Contracts, secs. 388, 389; Bishop on Contracts, secs. 386, 387."
The opinion then quotes with approval from Lawson on Contracts as follows: "The third main rule is that that construction will be given which will best effectuate the intention of the parties, to be collected from the whole of the agreement; and, to ascertain the intention, regard must be had to the nature of the instrument, the condition of the parties executing it, and the objects which they had in view. . . . Courts will examine the whole of the contract and so construe each part with the others that all of them may, if possible, have some effect, for it is to be presumed that each part was inserted for a purpose and has its office to perform. So, where two clauses are inconsistent they should be construed so as to give effect to the intention of the parties as gathered from the whole instrument. So every word will, if possible, be made to operate, if by law it may, according to the intention of the parties."
These cases and the principle upon which they rest were again stated with approval in a decision by Mr. Associate Justice Allen in Hendrix v.Furniture Co., 156 N.C. 569. *Page 225 
While the rules of interpretation insisted on by defendant's counsel are correct as general propositions, and the authorities cited in his learned argument are apt to support them in proper cases, they are subordinated to the general principle recognized in the decisions cited, and correctly applying the same to the contract in question, there is no such conflict in the last clause of the agreement as requires or permits that it be rejected as meaningless. But on perusal of the entire instrument, we think it clear that the oil was to be delivered at the tank of defendant company at Charlotte, N.C.; that title did not pass and no charge for the oil could be made till such delivery, but at the price agreed upon, 5 1/4 cents per gallon, the party of the first part was not willing to stand for delays in shipment on the part of the (282) railroad company, and in that view the final clause was inserted, "Liability of party of first part ceases when shipment is delivered to railroad company."
This construction gives reasonable significance to all parts of the contract, harmonizes the different clauses, and is in accord with the rules of interpretation which we have approved and hold to be controlling on the facts presented.
There is no error, and the judgment below is affirmed.
No error.
Cited: Midgett v. Meekins, 160 N.C. 44.