GEORGE L. PROCTOR, ADMINISTRATOR OF THE ESTATE OF JOYCE BATTS PROC-
TOR v. NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE
COMPANY AND BOBBY F. JONES, ADMINISTRATOR C.T.A. OF THE ESTATE OF
WILLIAM GRAY EDWARDS, JR.

No. 384A88

(Filed 2 March 1989)

**Insurance § 69.1— required underinsured motorist coverage—failure of policy to
state existence or amount—coverage equal to liability coverage**

Where an insurer failed to comply with former N.C.G.S. § 20-279.21(b)(4)
(1983) and an automobile liability policy in which underinsured motorist
coverage was required because the insured had not rejected such coverage did
not state the existence or amount of such coverage, the statute required
underinsured motorist coverage equal to the maximum liability coverage pro-
vided by the policy.

Justice MEYER dissenting.

APPEAL of right pursuant to N.C.G.S. § 7A-30 of the decision
of a divided panel of the Court of Appeals, 90 N.C. App. 746, 370
S.E. 2d 258 (1988), affirming a judgment entered by *Wright, J.,* in
the Superior Court, EDGECOMBE County, on 2 November 1987.
Heard in the Supreme Court on 15 November 1988.

*Bridgers, Horton & Rountree, by Charles S. Rountree, for
the plaintiff appellee.*

*Poyner & Spruill, by Diane Dimond and Mary Beth Forsyth
Johnston, for the defendant appellant.*

MITCHELL, Justice.

The sole question presented by this appeal is what amount of
underinsured motorist coverage is required by law when an in-
surer has not complied with N.C.G.S. § 20-279.21(b)(4) and the
liability insurance policy in which the underinsured motorist
coverage is required does not state the existence or the amount
of such coverage. The trial court and the majority in the Court of
Appeals concluded that under such circumstances the statute, as

it was written at the time relevant to this case,[1] required underinsured motorist coverage equal to the maximum liability coverage provided by the policy. We affirm.

The facts controlling this case were stipulated by the parties in the trial court. The plaintiff's decedent, Joyce Batts Proctor, was killed in a traffic accident on 27 September 1984 while driving a van owned by Country Manor Antiques, a partnership in which she was a partner. The wrongful death of the plaintiff's decedent was caused by the negligence of William Gray Edwards, Jr., who was driving another vehicle involved in the accident. Edwards was covered by a liability insurance policy with maximum coverage limits of $25,000 per person and $50,000 per accident. The plaintiff's decedent was covered by a policy issued to Country Manor Antiques by the defendant, North Carolina Farm Bureau Mutual Insurance Co., with maximum liability coverage limits for wrongful death of $100,000 per person and $300,000 per accident, as well as uninsured motorist coverage.

Neither Country Manor Antiques nor the plaintiff's decedent had ever rejected underinsured motorist coverage in the policy issued by the defendant, as required by N.C.G.S. § 20-279.21(b)(4) if underinsured motorist coverage was not to be provided. The defendant had written the policy with a clause purportedly requiring that the insured request underinsured motorist coverage before it would be provided. The defendant now concedes that the clause contradicted N.C.G.S. § 20-279.21(b)(4) and that, by operation of the statute, underinsured motorist coverage was provided in its policy covering the plaintiff's decedent, even though premiums had never been paid for such coverage.

The plaintiff, George L. Proctor, administrator of Joyce Proctor's estate, sued the defendant insurance company for proceeds from the underinsured motorist coverage provided in its policy by

---

1. At the time of this accident, the statute provided in pertinent part:

[Motor vehicle liability insurance policies] shall . . . provide underinsured motorist coverage, to be used only with policies that are written at limits that exceed those prescribed by subdivision (2) of this section and that afford uninsured motorist coverage as provided by subdivision (3) of this subsection, but *not to exceed* the policy limits for automobile bodily injury *liability* as specified in the owner's policy.

N.C.G.S. § 20-279.21(b)(4) (1983) (emphasis added).

operation of the statute. The trial court granted summary judgment for the plaintiff in the amount of $75,000. The plaintiff's wrongful death damages had been found to be in excess of $100,000. After determining that the $100,000 per person maximum liability coverage of the policy issued by the defendant was the amount of underinsured motorist coverage required by the statute, the trial court deducted from that amount Edwards' maximum liability coverage of $25,000 to arrive at the $75,000 that the defendant owed the plaintiff, such deduction also being provided for by the statute as it was then written.

The defendant contends that the statute as written at the time of the accident was not intended to provide the maximum amount of underinsured motorist coverage in cases such as this where the insurer failed to comply with the statute and the existence and amount of such coverage were not stated in the policy. The defendant contends that when underinsured motorist coverage was provided solely by operation of the former version of the statute, it was only provided at the minimum level of underinsured motorist coverage offered by the insurer at the time, which in this case would have been $50,000. That is particularly appropriate in this case, the defendant contends, because the insured had opted to purchase only the minimum amount of *uninsured* motorist coverage. Accordingly, the defendant argues that the trial court should have awarded the plaintiff only $25,000, after deducting Edwards' $25,000 liability limit from the $50,000 minimum underinsured motorist coverage offered by the defendant.

The language of the statute was not explicit as to the amount of underinsured motorist coverage required at the time of this accident. Absent the insured's rejection of such coverage, the statute as written at that time required underinsured motorist coverage in all insurance policies that provided more than the statutory minimum liability coverage and which included uninsured motorist coverage. The statute provided that the underinsured motorist coverage was "not to exceed" the policy limits for automobile bodily injury liability as specified in the owner's policy. The statute's only other reference to the amount of such coverage was in its formula for the limit of the insurer's payment under such coverage, the limit then being "only the difference between the limits of the liability insurance [of the underinsured motorist] that is applicable and the limits of the underinsured

motorist coverage as specified in the owner's policy." N.C.G.S. § 20-279.21(b)(4) (1983).[2]

In order to determine what level of coverage the statute as formerly written was intended to mandate under the circumstances of this case, we must look to the purpose of the statute and the needs it was intended to address. The purpose of this State's compulsory motor vehicle insurance laws, of which the underinsured motorist provisions are a part, was and is the protection of innocent victims who may be injured by financially irresponsible motorists. *See Nationwide Mutual Insurance Co. v. Chantos*, 293 N.C. 431, 238 S.E. 2d 597 (1977).

The innocent plaintiff's damages in this case were in excess of $100,000, of which only $25,000 was recoverable (the plaintiff actually recovered less) from the liability coverage of the underinsured motorist who caused the accident. The defendant insurance company, which created the ambiguity confronting us in this case by its failure to comply with the statute, asks this Court to resolve the ambiguity in its favor. That would provide the plaintiff with an additional $25,000 — $50,000 underinsured motorist coverage, less the $25,000 liability limit of the underinsured motorist's policy — leaving in excess of $50,000 in damages uncompensated by operation of the statute.

Under the plaintiff's interpretation of the statute's requirements at the time of the accident, adopted by the trial court and the Court of Appeals, the statute would provide $100,000 of underinsured motorist coverage — an amount equal to the liability coverage in the defendant's policy — for the death of this innocent victim of a tortfeasor who was financially unable to make full compensation. Thus, the general purpose of the statute would be served better and more fully by the plaintiff's interpretation. Furthermore, such an interpretation is consistent with the principle that the remedial compulsory motor vehicle insurance statutes

2. The statute's ambiguity as to the amount of underinsured motorist coverage to be mandated under all circumstances, including when the policy does not comply with the statute as in this case, has now been clarified by the legislature. Subsection (b)(4) was amended effective 1 October 1985 to require in all cases that underinsured motorist coverage be "in an amount *equal to* the policy limits for automobile bodily injury liability as specified in the owner's policy." N.C.G.S. § 20-279.21(b)(4) (Cum. Supp. 1988) (emphasis added).

should be liberally construed to accomplish the beneficial purpose intended by the legislature. *See Moore v. Hartford Fire Insurance Co.*, 270 N.C. 532, 155 S.E. 2d 128 (1967).

As pointed out by the Court of Appeals, the legislature made the level of underinsured motorist coverage a function of *liability coverage*, not a function of *uninsured coverage* as urged by the defendant. 90 N.C. App. at 748, 370 S.E. 2d at 259. This is true under both the former version of the statute, which provided that underinsured motorist coverage would not exceed liability coverage, and under the current statute, which expressly provides that the limits of the two coverages are to be equal. This statutory relationship between underinsured motorist and liability coverages is further evidence that the former version of the statute, under these circumstances, was intended to provide compensation to the innocent victim in an amount up to the limit of the liability coverage in the defendant's policy covering the victim — the only limit on underinsured motorist coverage found in the statute as it was then written.

Unless they expressly say so, amendments to statutes are not *necessarily* clarifications of legislative intent. Nevertheless, the fact that the legislature has amended N.C.G.S. § 20-279.21(b)(4) since the accident in this case to mandate underinsured motorist coverage *equal to* liability coverage in all cases is some additional evidence that the statute's general purpose, which has not been changed, is best served when the statute is interpreted to provide the innocent victim with the fullest possible protection. That calls for underinsured motorist coverage up to the limit of the liability coverage.

The defendant in this case must be held responsible for issuing a policy that purported to include requirements that violated the provisions of N.C.G.S. § 20-279.21(b)(4) regulating critical aspects of the defendant's business. The defendant admits its responsibility for failing to comply with the statute. The defendant nevertheless asks this Court to give the statute a construction that would result in the least possible protection for the innocent victim of an underinsured tortfeasor, such result arising from the ambiguity created by the defendant's violation of the statute by failing to write underinsured motorist coverage into the policy. This would undermine the intent and purpose of the

statute, and we reject the construction of the statute proposed by the defendant.

For the foregoing reasons, we conclude that under the circumstances of this case, the statute as written at the time of the accident required that the victim of an underinsured tortfeasor have underinsured motorist coverage equal to the liability limits of the policy covering the victim, unless the victim had rejected such coverage. N.C.G.S. § 20-279.21(b)(4) (1983). Therefore, we affirm the decision of the Court of Appeals, which affirmed the trial court's summary judgment for the plaintiff in the amount of $75,000.

Affirmed.

Justice MEYER dissenting.

Underinsured motorist coverage is not required by law, since the insured may reject it. The repealed statute that governs this case, as well as the current statute, requires that the carrier offer underinsured coverage only to the holders of liability policies which exceed the minimum compulsory amounts of liability insurance. Even the currently effective statute, which provides that underinsured coverage must be offered in the amount of the upper limits of the owner's liability policy, does not *require* the motorist to carry such insurance since he may reject the same simply by electing not to purchase the coverage.

I agree with the majority that, because of the erroneous language in its policy, Farm Bureau should be held to have provided underinsured motorist coverage in this case. I differ from the majority as to the amount of coverage applicable. In my opinion, Farm Bureau should be held to have provided $50,000 in underinsured coverage for the death of the plaintiff's decedent, which, after the $25,000 credit for sums recovered from the tort-feasor, would leave a net liability of $25,000.

Recovery in this additional amount of $25,000 does equity in this case. It cannot be said that Mrs. Proctor had an expectation of receiving the higher coverage. The statute in effect at the time the policy was purchased certainly did not explicitly so provide. Nor can any such expectation have arisen from the words of the policy. Though the policy provisions relating to underinsured cov-

erage were totally erroneous, they served specifically to notify the insured that the policy did not provide any underinsured coverage at all. Nor can any such expectation be said to have arisen from any inquiry made to the company by the insured. The erroneous policy provisions clearly informed the insured that if underinsured coverage was desired, she should make inquiry of her agent, and she made no such inquiry. Nor can any such expectation be said to have arisen from the fact that the insured purchased more than the minimum amount of *un*insured coverage, because she did not. No evidence whatsoever has been produced which would suggest that the insured wanted or expected higher underinsured limits than the required minimum compulsory liability coverage.

While the statute has now been amended to specifically tie the amount of underinsured coverage to the amount of the liability coverage purchased by the insured and while there are probably only a few cases yet to be decided under the old statute, it is important to decide this case correctly. I vote to reverse the decision of the Court of Appeals.