NANCY SILVERS, INDIVIDUALLY AND ADMINISTRATRIX OF THE ESTATE OF STUART MARTIN WILLIAMS, DECEASED v. HORACE MANN INSURANCE COMPANY, ROGER MATTHEWS, AS AGENT, AND INDIVIDUALLY, JAMES RICHARD BELL, AND ROBERT EARL BELL

No. 261PA88

(Filed 5 April 1989)

**1. Insurance § 69— underinsured motorist coverage—settlement with tortfeasors no bar to recovery**

Although the phrase "legally entitled to recover" in N.C.G.S. § 20-279.21 (1983) and in provisions of an automobile insurance policy regarding underinsured motorist (UIM) coverage means that the insurance carrier's UIM liability is derivative, plaintiff insured's entry of a consent judgment releasing the tortfeasors and their insurance carrier does not bar her as a matter of law from recovering under the UIM coverage of her policy where conflicting provisions in the statute and in the policy appear to require the insured both to preserve the cause of action against the tortfeasor and to settle the cause before seeking UIM benefits.

**2. Insurance § 69— underinsured motorist coverage—settlement with tortfeasor without insurer's consent—necessity for showing prejudice**

An insured plaintiff's entry into a consent judgment with tortfeasors and their liability insurance carrier without notice to or the consent of the insured's UIM coverage carrier, in violation of the terms of the UIM policy, does not bar plaintiff from recovering UIM benefits under that policy unless the insurance carrier was materially prejudiced by plaintiff's failure to notify it and to procure its consent to the settlement. The insurance carrier bears the burden of proving such prejudice.

Justice WEBB dissenting.

Justice MEYER joins in this dissenting opinion.

ON discretionary review of a decision of the Court of Appeals, reported at 90 N.C. App. 1, 367 S.E. 2d 372 (1988), affirming in part and reversing in part judgments entered by *Barnette, J.,* at the 1 September 1986 Civil Session of Superior Court, HARNETT County. Heard in the Supreme Court 14 February 1989.

*Anderson, Cox, Collier & Ennis, by Henry L. Anderson, Jr. and Clay A. Collier, for plaintiff-appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner & Hartzog, by Grady S. Patterson, Jr. and Theodore B. Smyth, for defendant-appellees Horace Mann Insurance Company and Roger Matthews.*

WHICHARD, Justice.

Defendants Horace Mann Insurance Company (Horace Mann) and Roger Matthews (Matthews) seek reversal of a decision of the Court of Appeals reversing the trial court's entry of summary judgment in their favor. The issue is whether an insured plaintiff who has entered into a consent judgment with a tort-feasor and the tort-feasor's liability insurance carrier, without notice to[1] or the consent of the insured's underinsured motorist (UIM) coverage carrier, in violation of the terms of the UIM policy, may nevertheless recover UIM benefits under that policy. We answer in the affirmative, and we thus affirm the Court of Appeals except as its opinion is modified herein.

On 14 March 1984 plaintiff's son was riding in a car driven by James Bell and owned by Robert Bell when the car was involved in a single-vehicle accident. Plaintiff's son died approximately a week later from injuries sustained in the accident. At the time of the accident plaintiff was covered by a Horace Mann insurance policy providing UIM coverage of at least $25,000 per person and $50,000 per accident.[2] On 4 May 1984 plaintiff filed a wrongful

---

1. Plaintiff argues in her brief that defendants Horace Mann and Matthews must have received actual notice of her claims because they denied the existence of underinsured motorist coverage in their answer to her complaint. However, these defendants complain of lack of notice of the claim filed in May 1984 against the Bell defendants, which culminated in a consent judgment, not lack of notice of the later claims.

2. Plaintiff alleges she had requested that Matthews, Horace Mann's agent, increase her UIM coverage prior to the accident, and that Matthews assured her that

death action against James and Robert Bell. On 16 May 1984 the following consent judgment was entered in that action:

> THIS CAUSE, coming on to be heard and being heard before the undersigned Judge upon statement of counsel for Plaintiff and Defendants that this cause has been settled and adjusted between the parties by agreement under the terms of which the Plaintiff shall have and recover judgment in the amount of Twenty-Five Thousand Dollars ($25,000); AND IT FURTHER APPEARING TO THE COURT from the face of the Complaint that this is an action for recovery for wrongful death of Plaintiff's intestate for which damages far exceed the liability coverage of the Defendants' insurance carrier, Indiana Lumbermans Mutual Insurance Co.; AND IT FURTHER APPEARING TO THE COURT, upon statement of counsel, that the liability of Indiana Lumbermans Mutual Insurance Company, which is the insurance carrier for the Defendant, is limited to Twenty-Five Thousand Dollars ($25,000) per person for bodily injury; AND IT FURTHER APPEARING TO THE COURT that the primary carrier, Indiana Lumbermans Mutual Insurance Co., wishes to pay the policy limits in order to avoid unnecessary litigation costs as liability on the part of the Defendants is clear and the damages of the Plaintiff's intestate far exceed the policy limits covered by the primary liability carrier, Indiana Lumbermans Mutual;

> AND IT FURTHER APPEARING TO THE COURT that the Plaintiff's intestate was covered by underinsured motorist coverage through The Horace Mann Company and that this consent judgment is not to be construed in any way to adversely affect the rights of Plaintiff or her intestate concerning any such underinsured coverage;

---

the coverage had been increased or, on other occasions, that "he would take care of it." She filed actions against defendants Horace Mann and Matthews for breach of contract, negligence, bad faith, fraud, and unfair trade practices in March 1985. These claims, if proven, save plaintiff from coming within the purview of N.C.G.S. § 20-279.21(b)(4), which provides that insurance policies shall "provide UIM coverage, to be used *only* with policies that are written at limits that exceed those prescribed by subdivision (2) of this section . . . ." (Emphasis added.) Subdivision (2) provides for minimum liability limits of $25,000 for bodily injury per person and $50,000 per accident. N.C.G.S. § 20-279.21(b)(2) (1983).

NOW, THEREFORE, IT IS BY CONSENT ORDERED AND AD-JUDGED that the Plaintiff's intestate have and recover of and from the Defendants, by and through their primary liability insurance carrier, Indiana Lumbermans Mutual Insurance Company, the sum of Twenty-Five Thousand Dollars ($25,000) and that the same shall be a full and final release of Indiana Lumbermans Mutual Insurance Company and the Defendants. It is hereby further ordered that this consent judgment shall not release nor relinquish any rights that the Plaintiff's intestate has or might have against Horace Mann Company under any underinsured liability coverage.

On 27 March 1985 plaintiff instituted this action against the Bells, Matthews, and Horace Mann to establish the total damages suffered due to the wrongful death of her son and to recover from Horace Mann under her UIM coverage. Plaintiff's complaint also included claims against Horace Mann and Matthews for breach of contract, negligence, bad faith, fraud, and unfair trade practices. All defendants moved to dismiss, relying on the consent judgment in the wrongful death action against the Bells as a bar to further liability. In addition, Matthews and Horace Mann alleged that plaintiff's violations of various policy provisions released them from further liability. The trial court considered matters outside the pleadings and thus treated the motions to dismiss as motions for summary judgment. It entered orders granting summary judgment for all defendants.

On appeal, the Court of Appeals affirmed the summary judgment entered in favor of the Bell defendants. Plaintiff did not seek discretionary review; thus, the propriety of the summary judgment entered in favor of the Bell defendants is not before us. The Court of Appeals reversed the summary judgment in favor of defendants Horace Mann and Matthews (hereinafter defendants) and remanded the cause to the trial court for further proceedings on the claims against those defendants. Those defendants petitioned for discretionary review, and on 7 September 1988 we allowed their petition.

[1] Defendants first argue that defendant-insurer's liability under the UIM coverage derives from the tortfeasors' liability. Because plaintiff has released the tortfeasors—the Bells—from any further liability, defendants argue that plaintiff is no longer

legally entitled to recover from the tortfeasors and thus no longer entitled to recover from defendants.

Both the insurance policy and the relevant statute[3] predicate UIM coverage on the insured's entitlement to recover from the tort-feasor. The policy states under Part C—Uninsured Motorist Coverage: "We will pay damages which a covered person is *legally entitled to recover* from the owner or operator of an uninsured motor vehicle because of:

　1. Bodily injury sustained by a covered person and caused by an accident; and

　2. Property damage caused by an accident."

(Emphasis added.) The policy includes underinsured motor vehicles within the definition of uninsured motorist (UM) coverage; therefore, Part C and its terms apply to UIM coverage. The phrase "legally entitled to recover" tracks the language of N.C.G.S. § 20-279.21(b)(3), which mandates that motor vehicle liability insurance be available "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . ."

In *Brown v. Casualty Co.*, 285 N.C. 313, 204 S.E. 2d 829 (1974), this Court construed the phrase "legally entitled to recover" in the context of an insured seeking recovery under his UM coverage when his claim against the tort-feasor was barred by the statute of limitations. Justice (later Chief Justice) Sharp wrote for the Court:

　　In our view it would indeed constitute "antics with semantics" to say that a litigant with a stale tort claim, one against which the applicable statute of limitations has been specifically pleaded, remains "legally entitled to recover" when his remedy has been taken away! To be "legally entitled to recover damages" a plaintiff must not only have a

---

3. The version of the statute in effect at the time the policy was issued and at the time of the accident was N.C.G.S. § 20-279.21 (1983). The statute was amended in 1985 to provide for different procedures in claims for underinsurance benefits. *See* 1985 N.C. Sess. Laws ch. 666, § 74. Our discussion of the relevant statutory provisions concerns only the 1983 versions.

cause of action but a remedy by which he can reduce his right to damage to judgment.

*Id.* at 319, 204 S.E. 2d at 833. *See also Buchanan v. Buchanan*, 83 N.C. App. 428, 350 S.E. 2d 175 (1986), *disc. rev. denied*, 319 N.C. 224, 353 S.E. 2d 406 (1987) (release of tort-feasor without consent of UIM insurer also discharged UIM insurer as a matter of law because of derivative nature of insurer's liability).

The words "legally entitled to recover" are subject to other interpretations. For example, in *Karlson v. City of Oklahoma City*, 711 P. 2d 72 (Okla. 1985), the Oklahoma Supreme Court interpreted the phrase as follows: "The words, 'legally entitled to recover[,]' simply mean that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to damages and prove the extent of those damages." *Id.* at 74-75 (quoting *Uptegraft v. Home Ins. Co.*, 662 P. 2d 681, 685 (Okla. 1983)). Given our interpretation of the phrase in *Brown*, however, we agree with defendants that "legally entitled to recover" should be construed to mean that the carrier's UIM liability is derivative in nature.

The analysis does not end here, however. As the Court of Appeals noted, both the policy and the statute contain an exhaustion clause. The policy contains a section entitled "Underinsured Motorists Coverage—North Carolina" which amended Part C, the UM section, to include the following paragraph:

> We will pay under this coverage only after the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements.

Similarly, the 1983 version of the statute provided:

> The insurer shall not be obligated to make any payment . . . to which underinsured motorist insurance coverage applies . . . until after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements . . . .

1983 N.C. Sess. Laws ch. 777, § 1. Thus, both the policy and the statute contain internally conflicting provisions. While a release of the tort-feasor acts to release the UIM insurance carrier of its

derivative liability, the statute and the policy terms regarding UIM coverage appear to require the insured to exhaust all liability policies by judgment or settlement before the insurer is obligated to pay under the UIM coverage. The insured reasonably could have read the exhaustion clause to require her to approach her UIM carrier with judgment or settlement in hand when seeking to recover under the UIM provisions of her policy.

The Court of Appeals aptly reasoned:

The exhaustion clause of the policy and the similar wording of Section 20-279.21(b)(4) obligate the insurer to pay *only after* the applicable liability bonds or policies have been exhausted by payment of a judgment or settlement. In entering the consent judgment with the Bells and their insurer, plaintiff established her legal entitlement to damages as to those parties. However, once the applicable liability policy was exhausted in compliance with the provision, plaintiff was no longer legally entitled to recover additional damages from the tortfeasors.

*Silvers v. Horace Mann Ins. Co.*, 90 N.C. App. 1, 8, 367 S.E. 2d 372, 376 (1988) (emphasis in original).

Like all contracts, insurance contracts must be construed against the drafter, which had the best opportunity to protect its interests. *Chavis v. Southern Life Ins. Co.*, 318 N.C. 259, 262, 347 S.E. 2d 425, 427 (1986). "If any ambiguity exists in the insurance contract, . . . the fault lies with the insurance company and not with the insured." *Mazza v. Medical Mut. Ins. Co.*, 311 N.C. 621, 630, 319 S.E. 2d 217, 223 (1984). This Court has stated:

The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. If, however, the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved against the insurance company and in favor of the policyholder.

*Woods v. Insurance Co.*, 295 N.C. 500, 506, 246 S.E. 2d 773, 777 (1978). A reasonable reading of the policy here appears to require the insured both to preserve the cause of action against the tortfeasor and to settle the cause before seeking UIM benefits. This conflict must be resolved in favor of the insured. *See Proctor v.*

*N.C. Farm Bureau Mutual Ins. Co.*, 324 N.C. 221, 376 S.E. 2d 761 (1989) (Court declined to resolve ambiguity created by insurer in its favor).

When statutory provisions cannot be reconciled, courts must look to the purpose of the statute as their guide in divining the intent of the legislature. *See McLean v. McLean*, 323 N.C. 543, 548-89, 374 S.E. 2d 376, 380 (1988). The Court of Appeals correctly noted regarding the Motor Vehicle Safety and Financial Responsibility Act: "The statute is remedial in nature and is to be liberally construed to effectuate its purpose of providing coverage for damages to injured parties caused by insured motorists with liability coverage not sufficient to provide complete compensation for the damages." 90 N.C. App. at 5, 367 S.E. 2d at 375. We have recently stated: "The purpose of this State's compulsory motor vehicle insurance laws, of which the underinsured motorist provisions are a part, was and is the protection of innocent victims who may be injured by financially irresponsible motorists." *Proctor*, 324 N.C. at ---, 376 S.E. 2d at --- (1989). Construing the statutory provision in question here in light of the remedial purpose of the Act, we conclude that it was not the intent of the General Assembly that plaintiff be prohibited from recovering UIM benefits from Horace Mann.

Thus, viewing the policy in question in light of well-established principles of contract interpretation, and viewing the statutory provision in question in light of well-established principles of statutory construction, plaintiff's entry of a consent judgment with the tortfeasors and their carrier does not bar her as a matter of law from recovering under the UIM coverage of her policy with Horace Mann.[4]

---

4. The Court of Appeals appears to have attached some significance to plaintiff's reservation of her right to UIM benefits against Horace Mann in the consent judgment. *See* 90 N.C. App. at 6, 367 S.E. 2d at 375. We do not consider this reservation of rights significant. Horace Mann was not a party to the consent judgment; therefore, the terms of the judgment cannot bind it. "A consent judgment is the contract of the parties entered upon the records with the approval and sanction of a court of competent jurisdiction . . . ." *Layton v. Layton*, 263 N.C. 453, 456, 139 S.E. 2d 732, 735 (1965) (quoting 3 Strong's N.C. Index *Judgments* § 10, at 16 (1960)). "The power of the court to sign a consent judgment depends upon the unqualified consent of the parties thereto . . . ." *Owens v. Voncannon*, 251 N.C. 351, 354, 111 S.E. 2d 700, 702 (1959) (quoting *King v. King*, 225 N.C. 639, 641, 35 S.E. 2d 893, 895 (1945)). "[I]n order to bind a third person contractually, an expression of

**[2]** Defendants also argue that plaintiff violated provisions in the policy requiring notice to the insurer and the insurer's consent before settlement. The policy provides:

Any judgment for damages arising out of a suit is not binding on us unless we have been served with a copy of the summons, complaint or other process against the uninsured motorist.

In Part C, under the heading "Exclusions," the policy states:

We do not provide Uninsured Motorists Coverage for property damage or bodily injury sustained by any person:

. . .

2. If that person or the legal representative settles the bodily injury or property damage without our written consent.

"[E]xclusions from, conditions upon and limitations of undertakings by the company, otherwise contained in the policy, are to be construed strictly so as to provide the coverage, which would otherwise be afforded by the policy." *Trust Co. v. Insurance Co.*, 276 N.C. 348, 355, 172 S.E. 2d 518, 522-23 (1970). In *Insurance Co. v. Construction Co.*, 303 N.C. 387, 279 S.E. 2d 769 (1981), this Court considered a condition precedent in an insurance policy requiring the insured to give the insurer notice of an accident "as soon as practicable." We held that failure to comply with the notification requirement did not relieve the insurer of its contractual obligations unless it suffered material prejudice in its investigation and defense under the policy. *Id.* at 396, 279 S.E. 2d at 774. The Court stated:

The rule we adopt today places the notice requirement in its proper context. No condition of timely notice will be given a greater scope than required to fulfill its purpose. Simply put, the scope of the condition precedent which will relieve an insurer of its obligations under an insurance contract, is only as broad as its purpose: to protect the ability of

assent by such person is necessary." 17 Am. Jur. 2d *Contracts* § 294 (1964). Here, Horace Mann did not assent to the reservation of rights against it. Therefore, if the consent judgment had operated to release Horace Mann by operation of law, plaintiff's recitation that she reserved her rights against Horace Mann, when Horace Mann was not a party to the consent judgment, would have been ineffective.

the insurer to defend by preserving its ability fully to investigate the accident.

*Id.* at 396, 279 S.E. 2d at 774-75. The Court of Appeals used a similar analysis in the present case, holding that the consent-to-settlement clause should be construed in light of its purpose. 90 N.C. App. at 11, 367 S.E. 2d at 378. That purpose was to protect the insurer's right of subrogation. *Id.*

The court then held that Horace Mann had waived its right to subrogation by the following term in the policy:

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them. However, our rights in this paragraph do not apply under:

1. Parts B and C . . . .

Part c describes UM and UIM coverage.

The Court concluded:

From this language, it is clear that Horace Mann does not have a right to subrogation under the terms of its policy. Furthermore, assuming Horace Mann had a right of subrogation in equity or by statute, we hold it waived the right under this section of the policy. . . .

Therefore, since Horace Mann has waived its right to subrogation, the clause serves no valid purpose. . . . We hold that plaintiff's failure to obtain Horace Mann's consent before entering into the consent judgment does not bar its recovery against Horace Mann as a matter of law.

*Id.* at 12-13, 367 S.E. 2d at 379 (citations omitted).

We agree that Horace Mann, by the terms of its policy, waived any right of subrogation otherwise accorded it. We also agree that protecting the insurer's subrogation right appears to

be the primary purpose of the consent-to-settlement clause of the policy. *See* Thomas, *No-Consent-to-Settlement Clauses and Uninsured Motorist Coverage*, 35 Fed'n Ins. Couns. Q. 71, 74 (1984); Note, *Underinsured Motorist Coverage: Legislative Solutions to Settlement Difficulties*, 64 N.C.L. Rev. 1408, 1411 (1986) ("To protect their subrogation rights, insurers often include a 'consent-to-settlement' clause in their insurance policies."). Defendants argue, however, that protecting the insurer's subrogation right is not the sole reason for the notice and consent-to-settlement clauses. The clauses also serve to protect the UIM carrier against collusion between the tortfeasor and the insured and noncooperation on the part of the tortfeasor after his or her release by the insured. We agree that the insurance company should have an opportunity to establish any prejudice that may have been caused by plaintiff's failure to notify it and to obtain consent to settlement as required by the policy. As we noted previously in a similar context, this approach to interpretation of the consent-to-settlement requirement has the advantage "of providing coverage whenever in the reasonable expectations of the parties it should exist and of protecting the insurer whenever failure strictly to comply with a condition has resulted in material prejudice." *Insurance Co.*, 303 N.C. at 396, 279 S.E. 2d at 775.

Accordingly, we remand the case to the Court of Appeals for further remand to the trial court to determine whether Horace Mann was materially prejudiced by plaintiff's failure to notify it and to procure its consent to settlement. *See Parrish v. Grain Dealers Mut. Ins. Co.*, 90 N.C. App. 646, 649-50, 369 S.E. 2d 644, 645-56 (Greene, J., concurring), *disc. rev. allowed*, 323 N.C. 366, 373 S.E. 2d 547 (1988). As established in *Insurance Co.*, the insurer will bear the burden of proving that it has been materially prejudiced by the insured's failure to notify it and to obtain its consent to settlement. *Insurance Co.*, 303 N.C. at 398, 279 S.E. 2d at 775-76. "[T]he burden of showing prejudice should be on the insurer because it is seeking to escape its obligation . . ., the very thing which it is paid to do." *Id.* at 397, 279 S.E. 2d at 775. Further, the insurer is in a much better position than the insured to know what factors are relevant to its posture regarding settlement and to recognize prejudice. *Id.* at 398, 279 S.E. 2d at 776. "An insured would be in a far less enviable position if he had the

burden of showing an absence of prejudice. Indeed, the insured would be forced to prove a negative." *Id.*

The decision of the Court of Appeals, as modified herein, is affirmed. The case is remanded to the Court of Appeals with instructions to remand to the Superior Court, Harnett County, for further proceedings consistent with this opinion.

Modified and affirmed.

Justice WEBB dissenting.

I dissent from the majority opinion. The provisions of the policy and N.C.G.S. § 20-279.21(b)(3) provide that a covered policyholder may recover damages the covered person is legally entitled to recover from the third party tort-feasor after the underinsured tort-feasor's coverage is exhausted. In this case the plaintiff is not entitled to recover from the Bells. Under the policy she is not entitled to recover from Horace Mann.

The majority says there are conflicting provisions in the policy and the statute. They say the provision that Horace Mann will pay "only after the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements" "appears to require the insured both to preserve the cause of action against the tort-feasor and to settle the cause before seeking UIM benefits." I believe the policy and the statute can and should be read to mean that before the policyholder may proceed against his own insurer on the underinsured motorist provision of his policy he must first proceed against the underinsured motorist. If he procures a judgment which is larger than the underinsured's liability coverage he may collect on his underinsured coverage after the underinsured tort-feasor's liability insurance has been paid. If the policyholder settles his claim for an amount *larger* than the coverage of the tort-feasor he may collect on his underinsured motorist coverage after the tort-feasor's policy has been exhausted. If the policy is read in this manner we can give effect to all its provisions. It is a rule of construction, which we are required to follow, that every part of a contract must be given effect if that can be done by any fair or reasonable interpretation. *Refining Co. v. Construction Co.,*

153 N.C. 277, 72 S.E. 1003 (1911). I believe it is error for the Court to ignore this rule.

I also believe the plaintiff is barred by her failure to give notice to Horace Mann and her settlement of the case without Horace Mann's consent. The policy provides that she must do these things in order for Horace Mann to be liable. I believe these provisions should be enforced. The majority has required Horace Mann to prove it has been prejudiced before it may take advantage of these exclusions. It appears to me that the prejudice is evident. Horace Mann must now defend a claim which the defendant has no interest in defending. I believe this shows prejudice enough.

I vote to reverse the Court of Appeals.

Justice MEYER joins in this dissenting opinion.