IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-867

Filed 15 April 2026

Anson County, No. 22CVS000405-030

CLIFFORD DEAN HYATT, Plaintiff,

v.

DANIEL CASE CALLAHAN and NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, INC., Defendants.

Appeal by defendant from order entered 16 January 2024 by Judge Dawn M. Layton in Anson County Superior Court. Heard in the Court of Appeals 10 March 2026.

> *Poisson, Poisson & Bower, PLLC, by E. Stewart Poisson and F. Davis Poisson, III, for plaintiff-appellee.*
>
> *Caudle & Spears, P.A., by Christopher P. Raab and Harold C. Spears, for defendant-appellant North Carolina Farm Bureau Mutual Insurance Company, Inc.*
>
> *No brief submitted for defendant-appellant Daniel Case Callahan.*

FLOOD, Judge.

Defendant North Carolina Farm Bureau Mutual Insurance Company, Inc., appeals from the trial court's orders granting summary judgment in favor of Plaintiff Clifford Dean Hyatt and allowing arbitration. On appeal, Defendant Farm Bureau argues the trial court erred in granting summary judgment in Plaintiff's favor and allowing arbitration where Plaintiff materially breached the motor insurance policy

and violated underinsured motorist statutory requirements. Upon careful review, we conclude the trial court erred in granting summary judgment in Plaintiff's favor where Plaintiff failed to provide Defendant Farm Bureau with the thirty-day period during which to act on a tentative settlement.

## I. Factual and Procedural Background

Plaintiff was insured by Defendant Farm Bureau when Plaintiff was seriously injured in a motor vehicle accident on 11 June 2021 after Defendant Daniel Callahan tried to pass in a no-passing zone. At the time of the accident, Defendant Callahan was insured by Erie Insurance, and his bodily injury liability coverage was limited to $300,000.00. Under Plaintiff's insurance policy with Defendant Farm Bureau (the "Policy"), however, Plaintiff had an underinsured motorist ("UIM") policy that provided up to $1,000,000.00 for bodily injury.

On 11 August 2022, Erie tendered Defendant Callahan's $300,000.00 bodily injury policy to settle Plaintiff's claim against Defendant Callahan. Plaintiff's counsel emailed Defendant Farm Bureau that same day, informing Defendant Farm Bureau of the tender and stating:

> Pursuant to North Carolina General Statute §20-279.21(b)(4), this will notify your client that they have thirty (30) days to protect their subrogation rights against the tortfeasor.
>
> I have also enclosed a copy of the Covenant Not to Enforce Judgment that Erie Insurance Company has provided for [Plaintiff] to sign. I would appreciate your reviewing this and confirming that [Plaintiff] can sign and that this will

preserve his underinsured motorist claim.

. . . .

> As of June 22, 2022, [Plaintiff] has incurred $273,830.95 in medical expenses. He is still under medical care so the bills will continue to accrue.
>
> Please let me know if your client agrees to waive subrogation. I will continue to keep you updated on [Plaintiff's] treatment status and look forward to working with you on this claim. Please reach out to me to provide your contact information at your earliest convenience.

Four days later, on 15 August 2022, Defendant Farm Bureau responded, through counsel, in full:

> [Counsel], I received the Letter of Representation for you[r] client, Clifford Hyatt. I will get back with you in the next few days as to if we are going to advance or not. If we do not advance the covenant not to enforce judgement would not affect the underinsured motorist claim. Hopefully I will be able to let you know if ok before the end of the week.
>
> Please let this be considered the acknowledgement for the letter of representation.

On the following day, Plaintiff signed the Covenant Not to Enforce Judgment provided by Erie, which released Defendant Callahan from "any personal liability whatsoever as a result of said incident" and contracted Plaintiff

> to hold harmless [Defendant Callahan] and to endorse any judgment or order, in connection with any civil action hereinafter filed, or judgment or order in any other action duly entered, only against [Defendant] Farm Bureau as underinsured motorist carrier for [Plaintiff] and not to enforce any such judgment or order against [Defendant Callahan] personally.

Plaintiff's counsel emailed the signed Covenant Not to Enforce to Erie that same day and requested that Erie issue its check, which it subsequently did.

At 4:02 p.m. on Friday, 9 September 2022, twenty-nine days following the receipt of notice of Erie's tender, Defendant Farm Bureau sent an email to Plaintiff's counsel and Erie informing them that it had decided to advance Erie's liability tender of $300,000.00 and it would be sending a check in the mail that day along with an advance and trust agreement. Erie responded the next business day, 12 September 2022, stating "[t]his claim was settled and payment was issued on 8/16/22 to the attorney & his client. I have enclosed copy of our covenant if you need."

On 15 September 2022, thirty-six days after Defendant Farm Bureau received the notice of Erie's tender, Plaintiff received Defendant Farm Bureau's envelope in the mail, stamped 9 September 2022, containing a check for $300,000.00 and a proposed advance and trust agreement for Plaintiff to sign. Defendant Farm Bureau's proposed advance and trust agreement provided, in relevant part:

> Now therefore, in consideration of such payment, the undersigned hereby agrees to take, through any representative designated by [Defendant Farm Bureau], such action as may be necessary or appropriate to recover the damages suffered by the undersigned from any person or persons, organization, association or corporation other than [Defendant Farm Bureau] who may be legally liable for said damages, and to hold any monies recovered from any such persons or organizations, including all monies received from Erie Insurance -and- [Defendant Callahan] in trust for [Defendant Farm Bureau] immediately upon recovery thereof, without deduction for any expense, costs

or attorney's fee in connection therewith; PROVIDED, however that any sums recovered in excess of the amount paid to the undersigned by [Defendant Farm Bureau] in consideration for this Trust Agreement shall be prorated according to the provisions of [N.C.]G.S. [§] 20-279.21 (b)(4).

Plaintiff's counsel, however, returned the check and unsigned agreement to Defendant Farm Bureau, explaining "[t]he [c]heck and the [a]greement are being returned to [Defendant] Farm Bureau as there has not been an appropriate and timely advancement and payment of the tendered liability insurance limits in accordance with N.C.G.S. § 20-279.21(b)(4)." Plaintiff's counsel elaborated:

> [Defendant] Farm Bureau was in "receipt" of the "notice" of the Erie liability limit tender on August 11, 2022, [] the 30-day statutory period to "advance a payment" expired on September 10, 2022 (or at the latest Monday, September 12), and [] the payment was not received until day 35 – September 15 – five days after expiration of the statutory period. North Carolina law is clear that if the payment is not made in this 30-day window, the statutory right to subrogation has been waived.

On 27 September 2022, Plaintiff sued Defendant Farm Bureau, requesting the trial court to compel arbitration for Plaintiff's UIM coverage claim. Defendant Farm Bureau answered and sought declaratory judgment, claiming that, pursuant to N.C.G.S. § 20-279.21(b)(4), Plaintiff was barred from his UIM coverage for breaching the Policy and violating the Financial Responsibility Act. Plaintiff moved to dismiss Defendant Farm Bureau's claim, contending "[Defendant] Farm Bureau did not advance a payment to Plaintiff of the liability insurance tender on or before

September 12, 2022, and has waived any right of subrogation under the UIM Statute [N.C.G.S. § 20-279.21(b)(4)]." The trial court subsequently denied Plaintiff's motion to dismiss, stayed all claims, and ordered the parties to proceed to discovery regarding Defendant Farm Bureau's declaratory judgment claim. After discovery, both parties filed cross motions for summary judgment, on which the trial court subsequently held a hearing.

On 16 January 2024, the trial court entered an order denying Defendant Farm Bureau's motion for summary judgment and granting Plaintiff's motion, finding that "Defendant Farm Bureau failed to timely advance a $300,000[.00] payment to [] Plaintiff in compliance with N.C.G.S. § 20-279.21(b)(4), and as such, Defendant Farm Bureau has waived its right to subrogation and Plaintiff is entitled to pursue his underinsured motorist coverage claim." Defendant Farm Bureau subsequently moved to amend the judgment and add a certification of final judgment pursuant to Rules 59(e) and 54(b) of the North Carolina Rules of Civil Procedure.

On 14 February 2024, the trial court entered an order that, in relevant part, denied Defendant Farm Bureau's motion to amend, granted Plaintiff's motion to compel arbitration, and stayed the matters until the UIM claim could be determined by arbitration.

The parties arbitrated the matter on 7 November 2024, with the arbitration panel awarding Plaintiff $1,000,000.00. Plaintiff filed a motion with the trial court to enter a final judgment confirming the award. On 30 January 2025, the trial court

ordered

> Plaintiff have [j]udgment against Defendant [Farm Bureau] in the total sum of $1,130,241.10, subject to the credit for the pre-suit payment of liability proceeds of $300,000.00 and medical payments proceeds of $5,000.00, plus post-judgment interest at the legal rate of eight percent (8%) or $152.33 per day ((.08 x $695,000.00)/365) from the entry of this [j]udgment until this [j]udgment is deemed satisfied.

Defendant Farm Bureau filed another motion to amend pursuant to "Rule 59(e) and (a)(1) and/or Rule 60(b) of the North Carolina Rules of Civil Procedure[,]" contending the judgment award contained a mathematical error and requesting the trial court "specifically provide that it is a final judgment intended to be a full adjudication of all claims and parties." The trial court subsequently corrected the judgment award and ordered it to be the final judgment for claims and parties.

Defendant Farm Bureau timely appealed.

## II. <u>Jurisdiction</u>

This Court has jurisdiction to hear this appeal from a final judgment from a superior court pursuant to N.C.G.S. §§ 7A-27(b) and 1-278 (2023). *See Piazza v. Kirkbride*, 246 N.C. App. 576, 595 (2016), *aff'd as modified on other grounds*, 372 N.C. 137 (2019) ("This appeal arises from a final judgment. Accordingly, this Court has jurisdiction to consider this appeal under N.C.[G.S.] § 7A-27(b)(1), and jurisdiction to consider intermediate orders necessarily affecting the judgment under N.C.[G.S.] § 1-278.").

### III. <u>Standard of Review</u>

"The standard of review for summary judgment is de novo." *Forbis v. Neal*, 361 N.C. 519, 524 (2007). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *In re S.W.*, 298 N.C. App. 39, 44 (2025) (citation modified). "Summary judgment is appropriate when no genuine issue of material fact exists, and a party is entitled to judgment as a matter of law." *Value Health Sols., Inc. v. Pharm. Rsch. Assocs., Inc.*, 385 N.C. 250, 267 (2023). We view the record "in the light most favorable to the non-movant, giving it the benefit of all inferences which reasonably arise therefrom." *Murray v. Nationwide Mut. Ins. Co.*, 123 N.C. App. 1, 8 (1996) (citation omitted).

Furthermore, we interpret the Financial Responsibility Act and examine the terms of a motor vehicle insurance policy de novo, as those are also questions of law. *Osborne v. Paris*, 283 N.C. App. 399, 404 (2022); N.C.G.S. §§ 20-279.1 through 20-279.39 (2023). "[O]ur Supreme Court has held that statutory interpretation properly begins with an examination of the plain words of the statute." *State v. Campbell*, 285 N.C. App. 480, 487 (2022) (citation modified). "If the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning." *JVC Enters., LLC v. City of Concord*, 376 N.C. 782, 785 (2021); *see also N.C. Farm Bureau Mut. Ins. Co., Inc. v. Dana,* 379 N.C. 502, 510 (2021) ("Courts should give effect to the words actually used in a statute and should neither delete words that are used nor insert words that are not used into the relevant

statutory language during the statutory construction process."). "Statutes dealing with the same subject matter[, however,] must be construed *in pari materia*, and harmonized, if possible, to give effect to each." *Hoffman v. Edwards*, 48 N.C. App. 559, 564 (1980) (quotation marks and citation omitted). "We presume that the General Assembly acts with full knowledge of prior and existing law." *Osborne*, 283 N.C. App. at 404.

## IV. <u>Analysis</u>

On appeal, Defendant Farm Bureau argues the trial court erred in granting Plaintiff's motion for summary judgment and motion to compel arbitration where Plaintiff materially breached the Policy and violated UIM statutory requirements. Specifically, Defendant Farm Bureau contends that, "when [Plaintiff] settled with [Defendant] Callahan without [Defendant] Farm Bureau's consent and without affording [Defendant] Farm Bureau thirty days to advance Erie's liability tender, [Plaintiff] violated the Policy and statutory requirements, barring UIM coverage." We agree.

"The purpose of the Financial Responsibility Act is to compensate the innocent victims of financially irresponsible motorists. It is a remedial statute to be liberally construed so that the beneficial purpose intended by its enactment may be accomplished." *Id*. (citation and internal quotation marks omitted). "The terms of the Financial Responsibility Act are impliedly written into every policy of insurance as a matter of law." *Id*. (citation omitted).

Pursuant to the Financial Responsibility Act, in relevant part to UIM claims,

> *[n]o insurer* shall exercise any right of subrogation or any right to approve settlement with the original owner, operator, or maintainer of the underinsured highway vehicle under a policy providing coverage against an underinsured motorist *where the insurer has been provided with written notice before a settlement* between its insured and the underinsured motorist *and the insurer fails to advance a payment to the insured in an amount equal to the tentative settlement within 30 days following receipt of that notice.*

N.C.G.S. § 20-279.21(b)(4) (2023) (emphasis added). Thus, we read this statute as preventing Defendant Farm Bureau from "exercis[ing] any right of subrogation . . . where [Defendant Farm Bureau] has been provided with written notice before a settlement between [Plaintiff] and [Defendant Callahan] and [Defendant Farm Bureau] fails to advance a payment to [Plaintiff] in an amount equal to the tentative settlement within 30 days following receipt of that notice." *See id*.

Furthermore, the Policy between Plaintiff and Defendant Farm Bureau provides, in respect to UIM coverage:

> This coverage does not apply to:
>
> 1. Any claim settled by the "insured" or any legal representative of the "insured" *without our consent.* However, this exclusion does not apply to a settlement made with the insurer of [an underinsured motor vehicle] *in accordance with the procedure described in Paragraph A.2.b.*

(Emphasis added.) The procedure of paragraph A.2.b. of the Policy reiterates the UIM Statute requirements:

With respect to damages resulting from an "accident" with a vehicle . . . of the definition of "uninsured motor vehicle[,"] we will pay under this coverage *only if* Paragraph a. or b. below applies:

. . . .

b. A tentative settlement has been made between an "insured" and the insurer . . . of [an] "uninsured motor vehicle" and we:

> (1) Have been given prompt written notice of such tentative settlement; and

> (2) Advance payment to the "insured" in an amount equal to the *tentative settlement within 30 days* after receipt of notification.

(Emphasis added.) The Policy further provides:

A person seeking coverage from an insurer, owner or operator of [an underinsured motor vehicle] *must* also promptly notify us in writing of a tentative settlement between the "insured" and the insurer and *allow us to advance payment to that "insured" in an amount equal to the tentative settlement within 30 days* after receipt of notification *to preserve our rights* against the insurer, owner or operator of such vehicle.

(Emphasis added.)

Defendant Farm Bureau does not dispute it received written notice of the proposed settlement; instead, Defendant Farm Bureau argues Plaintiff breached the Policy and violated the UIM Statute when, prior to the expiration of the requisite thirty-day time period, Plaintiff signed the Covenant Not to Enforce.

Pursuant to the plain language of the statute, *see Campbell*, 285 N.C. App. at

487, which is impliedly written into the Policy as a matter of law, *Osborne*, 283 N.C. App. at 404, an insurer must advance payment for a *tentative* settlement, not a signed settlement, in order to exercise its right to approve a settlement and its right to subrogate, *see* N.C.G.S. § 20-279.21(b)(4). Although unpublished and thus not binding, our decision in *Erie Ins. Exch. v. Strickland* addressed this very issue, and we align here with our previous analysis. 2025 WL 1324059, *review denied*, 923 S.E.2d 232 (N.C. 2025).

In *Strickland*, the insured sought UIM coverage with his insurance company after he provided written notice of a tentative settlement agreement but signed the agreement thirteen days later. *Id.* at *1. The insurer did not advance any payment. *Id.* When the insured brought a claim for his UIM coverage, the insurer filed a claim for declaratory judgment, claiming it did not owe UIM coverage, and the trial court agreed. *Id.* at *2. On appeal, we affirmed the trial court and explained:

> The unambiguous language of [N.C.G.S. §] 20-279.21(b)(4), however, provides that an UIM insurer shall not exercise any right of subrogation or any right to "*approve settlement*" if it fails to advance a payment "in an amount equal to the *tentative settlement*" within thirty-days following the written notice. An interpretation of "to approve settlement" and "tentative settlement," by its plain meaning, implies that an UIM insurer has thirty days to act *before* the finalization of a settlement between the insured and the primary liability insurance carrier. Stated differently, an UIM insurer cannot "approve" of a settlement that has already been completed and is no longer "tentative."

*Id.* at *6 (citation modified) (emphasis in original).

Plaintiff, however, argues that even if this Court concludes he breached the Policy and violated N.C.G.S. § 20-279.21(b)(4) by failing to give Defendant Farm Bureau the full thirty days to act on its right to approve, Defendant Farm Bureau's subrogation rights were not lost because another portion of the statute, added in 1997, provides: "[a] covenant not to enforce judgment shall not preclude the injured party from pursuing available underinsured motorist benefits, unless the terms of the covenant expressly provide otherwise, *and shall not preclude an insurer providing underinsured motorist coverage from pursuing any right of subrogation.*" N.C.G.S. § 20-279.21(b)(4) (emphasis added). In making this argument, Plaintiff contends the language of the Covenant Not to Enforce holds only Plaintiff personally—not Defendant Farm Bureau—as contracted not to hold Defendant Callahan liable.

While Plaintiff may be correct that Defendant Farm Bureau may statutorily have the right to subrogate in this scenario, our Supreme Court has explained an insurance company should have the right to approve a settlement or, if the insured fails to allow the insurance company the right to approve, the insurance company should be allowed the opportunity to "establish any prejudice" by this failure. *Silvers v. Horace Mann Ins. Co.*, 324 N.C. 289, 296 (1989). In *Silvers*, the Court considered the issue of "whether an insured plaintiff who has entered into a consent judgment with a tortfeasor and the tortfeasor's liability insurance carrier, without notice to or the consent of the insured's [UIM] coverage carrier, in violation of the terms of the UIM policy, may nevertheless recover UIM benefits under that policy." *Id.* at 290.

The insurer argued that, not only did the notice and right to approve clauses protect the insurer's right to subrogate, but "[t]he clauses also serve to protect the UIM carrier against collusion between the tortfeasor and the insured and noncooperation on the part of the tortfeasor after his or her release by the insured." *Id.* at 299. The Court agreed, holding "the insurance company should have an opportunity to establish any prejudice that may have been caused by [the insured's] failure to notify it and to obtain consent to settlement as required by the policy." *Id.* at 299. The Court reasoned this approach "has the advantage 'of providing coverage whenever[,] in the reasonable expectations of the parties[,] it should exist and of protecting the insurer whenever failure strictly to comply with a condition has resulted in material prejudice.'" *Id.* at 299 (quoting *Great Am. Ins. Co. v. C. G. Tate Const. Co.*, 303 N.C. 387, 396 (1981)).

The Court thus remanded to the trial court with instructions to determine whether the insurer was materially prejudiced by the insured's failure to give notice and to allow the insurer the opportunity to consent to the settlement. *Id.* Accordingly, although the portion of the statute protecting the right to subrogate in the face of a covenant not to enforce was added after *Silvers* was decided, *Silvers*' holding nonetheless stands as to the rights of an insurer where its insured fails to obtain the consent of the insurer. *See id.*

Here, Plaintiff gave proper written notice but then signed the Covenant Not to Enforce five days later without Defendant Farm Bureau's consent. Thus, while the

plain language of the amended statute would protect Defendant Farm Bureau's right to subrogate if there were an agreed-upon settlement between Plaintiff and the tortfeasor, depending on the language of the settlement, Plaintiff failed to give Defendant Farm Bureau the right to consent. By entering into an actual settlement, Plaintiff's settlement agreement foreclosed Defendant Farm Bureau's right to approve and subrogate during the thirty-day tentative settlement period provided pursuant to N.C.G.S. § 20-279.21(b)(4).

Accordingly, we reverse and remand the trial court's grant of summary judgment in favor of Plaintiff. On remand, the trial court must determine whether Defendant Farm Bureau was materially prejudiced by Plaintiff's failure to allow it to exercise its right to approve the settlement. *See Silvers*, 324 N.C. at 299. "Our role is not to speculate about the consequences of the language the legislature chose; we interpret that language according to its plain meaning and if the result is unintended, the legislature will clarify the statute." *Ennis v. Haswell*, 292 N.C. App. 112, 119 (2024) (citation and internal quotation marks omitted).

## V. Conclusion

Upon careful review, we conclude the trial court erred in granting summary judgment in Plaintiff's favor where Plaintiff failed to provide Defendant Farm Bureau with the statutory the thirty-day period during which to act on a tentative settlement.

REVERSED AND REMANDED.

Judges TYSON and GRIFFIN concur.