ROSE MARIE LEDFORD SMITH, RITA CARDEN AND FRANCES W. LEDFORD
v. NATIONWIDE MUTUAL INSURANCE COMPANY AND SOUTH CARO-
LINA INSURANCE COMPANY

No. 8315SC1102

(Filed 5 February 1985)

**Insurance § 95.1— automobile liability insurance—insufficient notice of cancellation
for nonpayment of premium**

> The "Premium Notice" and "Expiration Notice" mailed by defendant in-
> surer to plaintiff insured were not manifestations of a willingness to renew an
> automobile liability insurance policy which were refused by the insured, nor
> were they effective notice of refusal to renew by the insurer for nonpayment
> of premium as required by G.S. 20-310(f), since the "Expiration Notice" pur-
> ported to grant insured 16 days from the date of expiration of the policy,
> rather than from the date of mailing or delivery, to pay his premium for semi-
> annual renewal; the notice did not advise insured of his right to request in
> writing a hearing and review from the Commissioner of Insurance; nor did the
> notice advise insured that he might be eligible for insurance through the N. C.
> Automobile Insurance Plan or that operation of a motor vehicle without having
> liability insurance is a misdemeanor.

APPEAL by defendant Nationwide Mutual Insurance Company
from *McLelland, Judge*. Judgment entered 22 August 1983 in
Superior Court, ORANGE County. Heard in the Court of Appeals
23 August 1984. Heard on rehearing in the Court of Appeals 8
January 1985.

The facts of this case are set out in *Smith v. Nationwide*, 71
N.C. App. 69, 321 S.E. 2d 498 (1984). In apt time, defendant Na-
tionwide Mutual Insurance (Nationwide) filed a petition to rehear
pursuant to Rule 31, Rules of Appellate Procedure. This court
granted the petition to rehear in pertinent part, as follows:

> On rehearing, this Court will consider the question
> whether the trial court properly allowed summary judgment
> for the defendant South Carolina Insurance Company.

*Coleman, Bernholz, Dickerson, Bernholz, Gledhill and Har-
grave, by Douglas Hargrave, for plaintiff-appellees.*

*Moore, Ragsdale, Liggett, Ray and Foley, by Peter M. Foley
and Kurt E. Lindquist, II, for Nationwide Mutual Insurance Com-
pany, defendant-appellant.*

*Holt, Spencer, Longest and Wall, by James C. Spencer, Jr.,
for South Carolina Insurance Company, defendant-appellee.*

Smith v. Nationwide Mut. Ins. Co.

EAGLES, Judge.

In the decision of this court reported in *Smith v. Nationwide, supra,* the summary judgment for defendant South Carolina Insurance Company (South Carolina) entered by the trial court was affirmed because defendant Nationwide failed to substantially comply with the clear terms of G.S. 20-310(f) when it failed to renew the automobile policy of its insured, Paul Allen Smith.

In our resolution of the case on appeal we noted that:

For the purposes of the summary judgment motion, Nationwide stipulated that its insured, Paul Allen Smith, tendered partial payment of the premium on 6 July 1979 and a check for the full amount of the premium on 11 July 1979, both of which were refused by Nationwide.

Nationwide argues correctly in its petition for rehearing that these stipulations applied *only* to defendant Nationwide's motion for summary judgment and *not* to the motion for summary judgment of defendant South Carolina. Stipulations are encouraged and their effects are restricted to the extent manifested by the parties in their agreement. *Rickert v. Rickert,* 282 N.C. 373, 193 S.E. 2d 79 (1972).

We further agree that there was no "cancellation" of the insured's policy since there was no unilateral termination of a policy before the end of the stated term. *Scott v. Allstate Insurance Company,* 57 N.C. App. 357, 291 S.E. 2d 277 (1982).

However, we do not agree with Nationwide's contention that there was no "refusal to renew for non-payment of premium."

The question here involved is therefore, whether, notwithstanding the language of G.S. 20-310(g), Nationwide must comply with the mandate of G.S. 20-310(f) when it declines to renew an automobile liability insurance policy for non-payment of premium after mailing to its insured a "Premium Notice" and an "Expiration Notice." The plaintiffs contend that on 5 July 1979, the date of the accident referred to in our original opinion, the insurance policy issued by Nationwide was still in full force and effect as a matter of law because Nationwide had failed to comply with the requirements of G.S. 20-310(f) relating to cancellation or

refusal to renew for non-payment of premium. We agree and hold that summary judgment was proper in this case.

Summary judgment is a device whereby judgment is rendered if the pleadings, depositions, interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that a party is entitled to judgment as a matter of law. *Johnson v. Phoenix Mutual Life Insurance Company*, 300 N.C. 247, 266 S.E. 2d 610 (1980). The goal of this procedural device is to allow disposition before trial of an unfounded claim or defense. *Asheville Contracting Company v. City of Wilson*, 62 N.C. App. 329, 303 S.E. 2d 365 (1983).

The undisputed facts are that: On 27 February 1979, defendant Nationwide issued to Paul Allen Smith its policy of automobile liability insurance numbered 61E686567 with a policy period from 22 February 1979 to 22 June 1979. On 1 June 1979 Nationwide mailed a document entitled "Premium Notice" through the United States mail, first class postage, to Paul Allen Smith at his home address. On 27 June 1979, Nationwide mailed a document entitled "Expiration Notice" through the United States mail, first class postage, to Paul Allen Smith at his home address. Neither of the two documents so mailed were returned to Nationwide as undelivered. On 5 July 1979, the Smith vehicle described in the Nationwide policy of insurance was involved in a collision in Orange County, North Carolina.

The trial court, in its summary judgment order filed 6 September 1983, found that there was no genuine issue as to any material fact with respect to the insurance coverage for the Paul Allen Smith vehicle, a 1969 Chrysler, and that the coverage afforded by Nationwide was in full force and effect on the date of the collision, 5 July 1979.

The deposition of Ann Amos, supervisor of Nationwide's data entry department in Raleigh, tends to show and Nationwide's brief states, that the policy in question was terminated by Nationwide for failure to pay the premium.

It is clear from the "Premium Notice" mailed 1 June 1979 and the "Expiration Notice" mailed 27 June 1979, that the policy in question would have been renewed by Nationwide if the premi-

um had been paid in full by the deadline set in the "Expiration Notice."

The original policy listed an expiration date of 22 June 1979 and the "Expiration Notice," mailed on 27 June 1979, purported to grant Paul Allen Smith an additional 16 day period beyond 22 June 1979 in which he could pay his premium without an interruption in coverage. When full payment was not received during this additional 16 day period, Nationwide terminated the policy. The basis for Nationwide's failure to renew was nonpayment of premium.

Before an insurer may cancel or refuse to renew a policy of automobile liability insurance for failure to pay a premium due, the insurer must follow the provisions of G.S. 20-310 and G.S. 20-309(e). *Nationwide Mutual Ins. Co. v. Davis*, 7 N.C. App. 152, 171 S.E. 2d 601 (1970).

The pertinent part of G.S. 20-310 is found in subsection (f) which provides:

(f) No cancellation or refusal to renew by an insurer of a policy of automobile insurance shall be effective unless the insurer shall have given the policyholder notice at his last known post-office address by certificate of mailing a written notice of the cancellation or refusal to renew. Such notice shall:

(1) Be approved as to form by the Commissioner of Insurance prior to use;

(2) State the date, not less than 60 days after mailing to the insured of notice of cancellation or notice of intention not to renew, on which such cancellation or refusal to renew shall become effective, except that such effective date may be 15 days from the date of mailing or delivery when it is being canceled or not renewed for the reasons set forth in subdivision (1) of subsection (d) and in subdivision (4) of subsection (e) of this section;

(3) State the specific reason or reasons of the insurer for cancellation or refusal to renew;

(4) Advise the insured of his right to request in writing, within 10 days of the receipt of the notice, that the Commis-

sioner of Insurance review the action of the insurer; and the insured's right to request in writing, within 10 days of receipt of the notice, a hearing before the Commissioner of Insurance;

(5) Either in the notice or in an accompanying statement advise the insured of his possible eligibility for insurance through the North Carolina Automobile Insurance Plan; and that operation of a motor vehicle without complying with the provisions of this Article is a misdemeanor and specifying the penalties for such violation.

G.S. 20-310(f)(2) refers to subdivision (e)(4) of this same statute which states:

(e) No insurer shall refuse to renew a policy of automobile insurance except for one or more of the following reasons . . . (4) The named insured fails to discharge when due any of his obligations in connection with the payment of premiums for the policy or any installment thereof.

Thus, all of the provisions of G.S. 20-310(f) must be complied with before an insurer may refuse to renew an insurance policy pursuant to G.S. 20-310(e)(4). Compliance means substantial compliance with G.S. 20-310 in order for an insurer to effectively cancel [or fail to renew] an automobile liability policy for nonpayment of premium. In the instant case, Nationwide failed to substantially comply with the statute's requirements.

Here, Nationwide by the terms of its "Expiration Notice" mailed 27 June 1979 purports to grant its insured 16 days from the date of expiration, 22 June 1979, within which to pay his premium for semi-annual renewal. The clear implication of the "Expiration Notice" is that if payment is not received, Nationwide will not renew. The "Expiration Notice" falls short of substantial compliance with G.S. 20-310(f) in several respects.

G.S. 20-310(f)(2) requires at least 15 days notice *from the date of mailing or delivery* when insurance is being cancelled or not renewed for failure to pay a premium due. Here, the date of mailing is stipulated by the parties as 27 June 1979. The minimum notice required by G.S. 20-310(f)(2) was not met. If the requirements of G.S. 20-310(f)(2) had been met by the "Expiration

Notice," the insured would have had until 21 July 1979 to pay his premium and have his policy renewed well beyond the accident date of 5 July 1979.

In addition, the "Expiration Notice" did not comply with G.S. 20-310(f)(4) and (5). These provisions require the insurer to advise the insured of his right to request in writing a hearing and review from the Commissioner of Insurance, that the insured may be eligible for insurance through the North Carolina Automobile Insurance Plan, and that operation of a motor vehicle without having liability insurance is a misdemeanor. For these reasons, the trial court was correct in concluding that the policy of insurance issued by Nationwide to Paul Allen Smith was in full force and effect on 5 July 1979.

Nationwide argues again in its petition for rehearing that it did not have to comply with G.S. 20-310(f) because of the language contained in G.S. 20-310(g). For strong public policy reasons, we disagree.

G.S. 20-310(g) states:

Nothing in this section will apply:

(1) If the insurer has manifested its willingness to renew by issuing or offering to issue a renewal policy, certificate or other evidence of renewal, or has manifested such intention by any other means;

(2) If the named insured has notified in writing the insurer or its agent that he wishes the policy to be cancelled or that he does not wish the policy to be renewed;

(3) To any policy of automobile insurance which has been in effect less than 60 days, unless it is a renewal policy, or to any policy which has been written or written and renewed for a consecutive period of 48 months or longer.

Defendant Nationwide urges that G.S. 20-310(g) looks solely to the actions of the insurer in determining whether it must meet the requirements of G.S. 20-310(f). We do not believe the legislature intended a result that would render meaningless the protection now offered to the motoring public by G.S. 20-310(f).

Even if we were to accept Nationwide's interpretation of G.S. 20-310(g) as valid, if an insurer "manifests its willingness to renew" an insurance policy, it is axiomatic that the actions of the insured must be examined to determine whether there is a rejection of the insurer's offer to renew.

We also note that the "Premium Notice" here is very similar to the "Premium Notice" in *Insurance Company v. Davis, supra,* where this court held that the "Premium Notice" was not an offer to renew a policy. Rather:

> Such a notice, standing alone, is simply a statement of an account that will be due on the date indicated. If payment is not made, the insurer has the option of renewing the policy and treating the unpaid premium as an account receivable or of refusing to renew the policy. If the insure(r) [sic] refuses to renew, termination of coverage results from *its* action and notice to insured and the Motor Vehicles Department must be given as provided [in G.S. 20-310(f)]. The Court's findings that such notice was not given in this case supports its conclusion that the insurance coverage was still in effect at the time of the collision. 7 N.C. App. at 160, 171 S.E. 2d at 605. [Emphasis in original.]

In the *Davis* case, the notice relied on by Nationwide there as its offer to renew was entitled, as here, "Premium Notice." It stated, in pertinent part, "The semi-annual premium on your auto policy . . . is due on June 21, 1967." The premium to be paid by that date was $30.60 and in small print in the lower left-hand corner the following appears: "Your auto insurance is important security you can't afford to be without. Prompt payment of the premium shown above will assure you the continued protection of this policy." 7 N.C. App. at 159, 171 S.E. 2d at 605.

The *Davis* court, in holding that the "Premium Notice" was not an offer to renew the policy, found that the "Premium Notice" made no reference to the expiration date of the policy and *no warning of the consequences of a failure to pay the premium.* 7 N.C. App. 159, 171 S.E. 2d at 605. [Emphasis added.] We note that in the instant case, Nationwide's "Premium Notice" does have a reference to the expiration date, 22 June 1979, *but contains no warning of the consequences of a failure to pay the premium.* In fact, small print on the lower left-hand side of the "Premium

Notice" here states: "This auto premium notice renews our pledge to provide you the best in protection and service for your insurance dollar. Your payment now lets us keep our pledge to you." This language indicates that payment renews the policy but does not state the consequences of failure to pay the premium when due.

We hold that *Insurance Co. v. Davis, supra,* controls here and that the "Premium Notice" mailed to the insured in this case does not constitute an offer to renew a policy of insurance such as that appearing in *Faizan v. Insurance Co.,* 254 N.C. 47, 118 S.E. 2d 303 (1961) and relied on by Nationwide. Nationwide urges that where an insured fails to pay the premium by the due date, here 22 June 1979, the insurer has no duty to send an additional notice to the insured pursuant to G.S. 20-310. While it is true that our Supreme Court in *Faizan* held that the non-renewal was not by the insurer, but rather was the unilateral act of the insured, an examination of the reasoning of the *Faizan* court shows that the decision was based on more than mere failure to pay the premium when due.

> [The insured] did not pay the renewal premium on the date specified and did not tender the premium at any later date. He applied through the Assigned Risk Plan for insurance. 254 N.C. at 57, 118 S.E. 2d at 312.

In the *Faizan* case, the rejection by the insured was unequivocal not merely because he failed to pay the premium when due, but because he obtained another insurance policy from a different insurance company. Here, there is no evidence of an unequivocal rejection of Nationwide's purported offer to renew by Paul Allen Smith.

Nationwide urges that G.S. 20-310(g) applies where an insurer manifests "any willingness to renew" and that to hold otherwise would demand that the requirements of G.S. 20-310(f) be met in all cases where non-payment of premium results. Nationwide also argues that insurers could never have proper *termination* without compliance with the requirements of G.S. 20-310(f) making G.S. 20-310(g) superfluous. It appears to us that the legislature did in fact intend for insurers to meet the requirements of G.S. 20-310(f) in all cases of termination by the insurer, including those situations in which the insured fails to pay the premium when due. G.S. 20-310(g) is not rendered superfluous by this interpretation.

Rather, G.S. 20-310(g) retains its purpose to allow an insurer to avoid the requirements of G.S. 20-310(f) where the insurer has manifested its willingness to renew and the insured unequivocally rejects the renewal by acts such as obtaining an insurance policy from another company or by notifying the insurer or its agent in writing that he does not wish the policy to be renewed.

We also note that the "Expiration Notice" sent by Nationwide is not a document which would allow Nationwide to avoid the G.S. 20-310(f) notice requirements. The document was mailed to the insured 27 June 1979, five days after Nationwide says its cancellation was effective. This "Expiration Notice" cannot provide prospective notice of a past event and does not, itself, meet the notice requirements of G.S. 20-310(f). Advance notice must be given before termination is possible. *Faizan v. Insurance Co.,* *supra.*

We hold that Nationwide renewed the policy in question and treated the unpaid premium as an account receivable. This is further evidenced by the "Expiration Notice" which requested the insured to "pay $166.60" and to "please return this notice with your payment." Having been renewed, the policy was in effect; the subsequent termination for non-payment of premium, after the policy's renewal by Nationwide, was an act by the insurer requiring the full notice requirements of G.S. 20-310(f).

Because of our misapplication of Nationwide's stipulation as to tendered payments in our original opinion, we withdraw our opinion previously filed in *Smith v. Nationwide,* 71 N.C. App. 69, 321 S.E. 2d 498 (1984), and declare that it is no longer the law of this case having been superseded by our decision here. We note that the issue of whether or not the insured actually tendered the premium is not determinative of the outcome of the case on appeal.

We hold that in this case the "Premium Notice" and "Expiration Notice" were not "manifestations of a willingness to renew" which were refused by the insured. Neither were they effective notice of refusal to renew by the insurer for non-payment of premium as required by G.S. 20-310(f).

Nationwide's assigned error on the issue of punitive damages is not properly before us, there being no final order of the trial court from which to appeal.

Affirmed.

Judges ARNOLD and WHICHARD concur.