VIRGIE M. SANDERS, PLAINTIFF V. AMERICAN SPIRIT INSURANCE COMPANY, DEFENDANT

No. COA98-1247

(Filed 5 October 1999)

**Insurance— automobile—underinsured motorist coverage— summary judgment improper—need form promulgated by Rate Bureau and approval by Commissioner of Insurance**

The trial court erred in granting defendant's motion for summary judgment because the pertinent automobile insurance policy issued by defendant provides underinsured motorist coverage under N.C.G.S. § 20-279.21(b)(4) to plaintiff for injuries sustained while a passenger in an automobile driven by defendant's named

insured since rejection of underinsured motorist coverage is not accomplished unless it is in writing and on a form promulgated by the Rate Bureau and approved by the Commissioner of Insurance.

Appeal by plaintiff from judgment entered 22 June 1998 by Judge Knox V. Jenkins, Jr., in Johnston County Superior Court. Heard in the Court of Appeals 19 May 1999.

*Dean A. Shangler for plaintiff-appellant.*

*Yates, McLamb & Weyher, L.L.P., by R. Scott Brown and Michael J. Byrne for defendant-appellee.*

JOHN, Judge.

Plaintiff appeals the trial court's grant of defendant's summary judgment motion proffered pursuant to N.C.G.S. § 1A-1, Rule 56(c)(1990) (defendant's motion). The sole issue for our determination is whether an automobile insurance policy issued by defendant (the policy) provides underinsured motorist (UIM) coverage to plaintiff for injuries sustained while a passenger in an automobile driven by defendant's named insured Joan Johnson (Johnson). We conclude the policy provides such coverage and that the trial court erred in granting defendant's motion.

The following pertinent facts and procedural history are undisputed: On 6 December 1995, plaintiff, a passenger in an automobile driven by Johnson, was injured when Johnson's vehicle collided with an automobile operated by John Davenport (Davenport) on U.S. 70 in Wake County, North Carolina. Plaintiff, as an occupant of Johnson's vehicle, was insured under the policy issued by defendant to Johnson and her husband (Mr. Johnson).

In October 1997 and subsequent to settlement with Davenport's insurer, Travelers Insurance Company (Travelers), plaintiff initiated the instant action against defendant seeking UIM coverage for damages caused by Davenport's alleged negligence in excess of the amount tendered in settlement by Travelers. Defendant filed answer 18 December 1997, generally denying plaintiff's allegations and affirmatively defending upon grounds that Mr. Johnson had rejected UIM coverage under the policy.

On 2 March 1998, the parties agreed that UIM coverage under the policy was a condition precedent to plaintiff's recovery at trial and stipulated to severance of the issues so as to permit the trial court to

**SANDERS v. AMERICAN SPIRIT INS. CO.**

[135 N.C. App. 178 (1999)]

determine preliminarily as a matter of law whether Mr. Johnson had effectively rejected UIM coverage under the policy. The parties thereupon filed cross-motions for summary judgment. On 22 June 1998, the court granted defendant's motion and plaintiff thereafter timely appealed.

In support of its motion, defendant proffered upon Mr. Johnson's rejection of Uninsured/Underinsured Motorists Coverage and his selection of Uninsured Motorists Coverage under defendant's policy form F.39500A (defendant's form). Defendant's form provided:

ELECTION/REJECTION FORM
UNINSURED MOTORISTS COVERAGE
COMBINED UNINSURED/UNDERSINSURED
MOTORISTS COVERAGE

Uninsured Motorists Coverage (UM) and Combined Uninsured/Underinsured Motorists Coverage (UM/UIM) and coverage options are available to me. I understand that:

1. the UM and UM/UIM limits shown for vehicles on this policy may not be added together to determine the total amount of coverage provided.

2. UM and UM/UIM bodily injury limits up to $1,000,000 per person and $1,000,000 per accident are available.

3. UM property damage limits up to the highest policy property damage liability limits are available. Coverage for property damage is applicable only to damages caused by uninsured motor vehicles.

4. my selection or rejection of coverage will apply to any renewal, reinstatement, substitute, amended, altered, modified, transfer or replacement policy with this company, or affiliated company, unless a named insured makes a written request to the company to exercise a different option.

5. my selection or rejection of coverage below is valid and binding on all insureds and vehicles under the policy, unless a named insured makes a written request to the company to exercise a different option.

(CHOOSE ONLY ONE OF THE FOLLOWING)

____ I choose to reject Uninsured/Underinsured Motorists Coverage and select Uninsured Motorists Coverage at limits of:

SANDERS v. AMERICAN SPIRIT INS. CO.

[135 N.C. App. 178 (1999)]

Bodily Injury___; Property Damage ___

___ I choose Combined Uninsured/Underinsured Motorists Coverage at limits of:

Bodily Injury___; Property Damage ___

___ I choose to reject both Uninsured and Uninsured/ Underinsured Motorists Coverages.

Named
Insured _____

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. § 1A-1, Rule 56(c).

Plaintiff submits defendant was not entitled to summary judgment as a matter of law in that Mr. Johnson did not reject UIM coverage. Plaintiff argues defendant's form differed from that promulgated by the North Carolina Rate Bureau (the Rate Bureau form) and cites this Court's decision in *Hendrickson v. Lee*, 119 N.C. App. 444, 453, 459 S.E.2d 275, 280 (1995). Plaintiff's argument has merit.

In determining whether insurance coverage is provided by a particular automobile liability insurance policy, careful attention must be given to the type of coverage, the relevant statutory provisions, and the terms of the policy. *Vasseur v. St. Paul Mutual Ins. Company*, 123 N.C. App. 418, 420, 473 S.E.2d 15, 16, *disc. review denied*, 345 N.C. 183, 479 S.E.2d 209 (1996) (citations omitted). The instant case concerns UIM coverage and as such, the governing statute is the version of N.C.G.S. § 20-279.21(b)(4) (Supp. 1991), a section within the Financial Responsibility Act (the Act), in effect at the time the policy was issued. *See id.* at 420, 473 S.E.2d at 16. (G.S. § 20-279.21(b)(4) was thereafter, amended but the amendments in any event are irrelevant to the issue *sub judice*).

The Act is remedial in nature and must be liberally construed, *id.* at 421, 473 S.E.2d at 17 (citation omitted), in order to protect "innocent victims who may be injured by financially irresponsible motorists," *Proctor v. N.C. Farm Bureau Mutual Ins. Co.*, 324 N.C. 221, 224, 376 S.E.2d 761, 763 (1989) (citation omitted). The purpose of the Act is "best served when the statute is interpreted to provide the innocent victim with the *fullest possible protection*," *id.* at 225, 376

S.E.2d at 764 (emphasis added), from the negligent acts of an under-insured motorist.

The applicable version of G.S. § 20-279.21(b)(4) herein outlines specific procedures under which UIM coverage may be rejected by a named insured and states in pertinent part:

(b) [An] owner's policy of liability insurance:

. . . .

(4) Shall, in addition to the coverages set forth in subdivisions (2) and (3) of this subsection, provide underinsured motorist coverage, to be used only with a policy that is written at limits that exceed those prescribed by subdivision (2) of this section and that afford uninsured motorist coverage as provided by subdivision (3) of this subsection, in an amount not to be less than the financial responsibility amounts for bodily injury liability as set forth in G.S. 20-279.5 nor greater than one million dollars ($1,000,000) as selected by the policy owner. . . .

. . . .

The coverage required under this subdivision shall not be applicable where any insured named in the policy rejects the coverage. An insured named in the policy may select different coverage limits as provided in this subdivision. Once the named insured exercises this option, the insurer is not required to offer the option in any renewal, reinstatement, substitute, amended, altered, modified, transfer, or replacement policy unless the named insured makes a written request to exercise a different option. The selection or rejection of underinsured motorist coverage by a named insured is valid and binding on all insureds and vehicles under the policy.

If the named insured rejects the coverage required under this subdivision, the insurer shall not be required to offer the coverage in any renewal, reinstatement, substitute, amended, altered, modified, transfer or replacement policy unless the named insured makes a written request for the coverge. *Rejection of this coverage for policies issued after October 1, 1986, shall be made in writing by the named insured on a form promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance.*

G.S. § 20-279.21(b)(4) (emphasis added).

**SANDERS v. AMERICAN SPIRIT INS. CO.**

[135 N.C. App. 178 (1999)]

Defendant concedes its form executed by Mr. Johnson in purportedly rejecting UIM coverage was not approved by the Commissioner of Insurance nor identical in all respects to the Rate Bureau form. Indeed, comparison of the two forms reveals, *inter alia*, that defendant's form does not contain the term "combined" in choices 1 and 3, the list of options under the Rate Bureau's form providing as follows:

____ I choose to reject *Combined* Uninsured/Underinsured Motorists Coverage and select Uninsured Motorists Coverage at limits of:

Bodily Injury ____; Property Damage ____

____ I choose Combined Uninsured/Underinsured Motorists Coverage at limits of:

Bodily Injury ____; Property Damage ____

____ I choose to reject both Uninsured and *Combined* Uninsured/Underinsured Motorists Coverages.

(emphasis added).

According to plaintiff, the result of defendant's omission is that

the choices presented by Defendant's form allow selecting "Combined/Unisured/ Underinsured Motorists Coverage" at limits specified by the insured, [but not a concomitant] rejection of this specific type of available coverage

as provided by the Bureau's form. Defendant counters that "when viewed in the context of the entire form used by defendant, the phrase 'Uninsured/Underinsured Motorists Coverage' in Choices 1 and 3 can only be taken to mean 'Combined Uninsured/Underinsured Motorists Coverage.' " As such, continues defendant, Mr. Johnson's rejection of UIM coverage was effective because defendant's form was in "substantial compliance" with the Rate Bureau Form. We are not persuaded.

[When] a statute [such as G.S. § 20-279.21(b)(4)] is applicable to the terms of a policy of insurance, the provisions of that statute become part of the terms of the policy to the same extent as if they were written in[to] it, and if the terms of the policy conflict with the statute, the . . . statute will prevail.

*Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 263, 382 S.E.2d 759, 762 (1989) (citations omitted).

Accordingly, in *Hendrickson*, 119 N.C. App. 444, 459 S.E.2d 275, defendants therein unsuccessfully argued that rejection of UIM coverage could be accomplished by use of a form which " 'substantially complied' with the statutory mandate." *Id.* at 457, 459 S.E.2d at 282-83. In *Hendrickson*, this Court pointedly observed that

> G.S. § 20-279.21(b)(4) . . . provid[es] that rejection of UIM coverage "*shall*" be in writing and on "a form promulgated by the Rate Bureau and approved by the Commissioner of Insurance" [and] [t]he language "shall" as applied in Chapter 20 of the North Carolina Motor Vehicle Statutes, is "mandatory" and not merely "formal" and "directory language."

*Id.* at 454, 459 S.E.2d at 281 (citations omitted).

Similarly, in *Martin v. Continental Ins. Co.*, 123 N.C. App. 650, 474 S.E.2d 146 (1996), this Court addressed defendant insurer's contention that a purported rejection, not on the Rate Bureau form, nonetheless "clearly and unambiguously reject[ed] . . . [UIM] coverage" and was "valid and binding." *Id.* at 658, 474 S.E.2d at 150. We stated defendant's argument was "beside the point," *id.*, by virtue of its failure to acknowledge that

> [i]n *Hendrickson*, this Court strictly enforced the requirement that UIM coverage may be rejected only "in writing . . . on a form promulgated by the North Carolina Rate Bureau and approved by the Commissioner of Insurance," . . . in order to "assure compensation of the innocent victims of uninsured or underinsured drivers"—the primary purpose of the Act.

*Id.* (citations omitted).

Finally, in *State Farm Mut. Auto. Ins. Co. v. Fortin*, 350 N.C. 264, 513 S.E.2d 782 (1999), our Supreme Court reemphasized that

> [t]he language of [G.S. § 20-279.21(b)(4)] is *mandatory*. An insurer is obligated to obtain the insured's selection or rejection of UM or UM/UIM coverage in writing and *on a form promulgated by the Rate Bureau* and approved by the Commissioner.

*Id.* at 269, 513 S.E.2d at 784-85 (emphasis added).

Notwithstanding, defendant cites a circular letter mailed by the Rate Bureau to member companies as support for the position that "substantial compliance" with G.S. § 20-279.21(b)(4) might effect rejection of UIM coverage. The letter provided that

the language [of the form] may not be changed or substantively amended, without prior approval . . . .

Defendant maintains that the "fact that the Rate Bureau stated that the language of its forms may not be 'changed or substantively amended' " means the Rate Bureau "was using the word 'changed' in the sense [of] 'substantively amended.' " However, this Court has previously explained that the disjunctive term "or" creates two separate clauses and, when used, it is "incorrect to read the second part of [a] . . . definition as qualifying the first part." *Wrenn v. Byrd*, 120 N.C. App. 761, 766, 464 S.E.2d 89, 92, *disc. review denied*, 342 N.C. 666, 467 S.E.2d 738 (1995) (citation omitted).

Finally, defendant concludes by pointing to *Smith v. Nationwide Mut. Ins. Co.*, 72 N.C. App. 400, 324 S.E.2d 868, *rev'd on other grounds*, 315 N.C. 262, 337 S.E.2d 569 (1985). *Smith* construed N.C.G.S. § 20-310(f) (1978) which provided that an insurer "shall" provide notice containing specific information prescribed by the statute to cancel or refuse to renew automobile liability insurance policies. In *Smith*, this Court stated:

all of the provisions of [G.S. § 20-310(f)] must be complied with before an insurer may refuse to renew an insurance policy pursuant to [G.S. § 20-310(e)(4).] Compliance means substantial compliance with [G.S. § 20-310] in order for an insurer to effectively cancel [or fail to renew] an automobile liability policy for nonpayment of premium.

*Id.* at 404, 324 S.E.2d at 871.

Analogizing to the case *sub judice*, defendant insists our approval of "substantial compliance" with G.S. § 20-310(f) as adequate for an insurer to cancel or fail to renew an automobile liability policy for nonpayment of premium mandates ratification herein of "substantial compliance" with G.S. § 20-279.21(b)(4). We do not agree.

We first note that the opinion in *Smith* was issued at least ten years prior to the decisions in *Hendrickson*, *Martin* and *State Farm* cited above. Moreover, in *Pearson v. Nationwide Mutual Ins. Co.*, 325 N.C. 246, 255, 382 S.E.2d 745, 749 (1989), also subsequent to *Smith*, our Supreme Court held that certain subsections of G.S. § 20-310(f) require strict compliance to comport with the purpose of the Financial Responsibility Act. The Court stated in *Pearson*:

We conclude, both as to stating the date and giving the statutorily required period of time, that the insurer must strictly comply with the statute. . . .

For the protection of both the motoring public and the insured, automobile insurance cancellation dates must be expressly and carefully specified with certainty. They should not be left to the possible vagaries of date calculations nor to the uncertainties which result when less than the statutorily prescribed period of time has been given.

*Id.* at 252-53, 382 S.E.2d at 748; *see also Hales v. N.C. Insurance Guaranty Assn.*, 337 N.C. 329, 339, 445 S.E.2d 590, 597 (1994) (plaintiff insured's policy not canceled absent "forecast of evidence tending to show that the Commissioner of Insurance had previously approved the form of the notice[, and] the notice did not state the date on which any cancellation or refusal to renew would become effective, a date which 'must be expressly and carefully specified with certainty' in order to comply with the requirements of [the statute]") (citations omitted). It is well established that this Court is required to follow decisions of our Supreme Court until that Court orders otherwise. *See Dunn v. Pate*, 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993) (citation omitted).

In sum, we conclude our Supreme Court's expressed preference for "certainty," *Pearson*, 325 N.C. at 253, 382 S.E.2d at 748, so as "to provide . . . innocent victim[s injured by financially irresponsible motorists] with the fullest possible protection," *Proctor*, 324 N.C. at 225, 376 S.E.2d at 764, is best met by "avoiding confusion and ambiguity through the use of a single standard and approved form," *Hendrickson*, 119 N.C. App. at 456, 459 S.E.2d at 282. We therefore reiterate that the language of G.S. § 20-279.21(b)(4) is "mandatory," *State Farm*, 350 N.C. at 269, 513 S.E.2d at 784-85, and that "rejection of UIM coverage 'shall' be in writing and on 'a form promulgated by the Rate Bureau and approved by the Commissioner of Insurance,' " *Hendrickson*, 119 N.C. App. at 454, 459 S.E.2d at 281 (emphasis added) (quoting G.S. § 20-279.21(b)(4)). Defendant's form herein failed to meet this test, Mr. Johnson's purported rejection of UIM coverage thus was ineffective, and the trial court's grant of summary judgment in favor of defendant must be reversed.

Reversed.

Judges TIMMONS-GOODSON and HUNTER concur.