FARM BUREAU INSURANCE COMPANY OF N.C., INC., PLAINTIFF v. MARGARET A.
BLONG, ANCILLARY ADMINISTRATOR OF THE ESTATE OF MEGAN ANN BLONG, MARILYN
S. GEIGER AND MICHAEL H. GEIGER, ANCILLARY ADMINISTRATORS OF THE ESTATE OF
AMANDA MARIE GEIGER, BRENDA LAWLER, ADMINISTRATRIX FOR THE ESTATE OF
SHANA MARISSA LAWLER, MICHAEL MCGRADY, ANCILLARY ADMINISTRATOR OF THE
ESTATE OF ANGELA NICOLE MCGRADY, AND ANGELA AND DOUG HORNER, AND THEIR
SON, MICHAEL HORNER, DEFENDANTS

No. COA02-651

(Filed 5 August 2003)

## 1. Insurance— motor vehicle—UIM coverage—subrogation

The trial court did not err by finding that plaintiff UIM insurer
was entitled to be subrogated to the rights of the original plain-
tiffs in their independent dram shop settlement arising out of a
drunk driving accident even though defendants allege the UIM
policy at issue and the Financial Responsibility Act (Act) are
silent on the issue and the stated public policy of North Carolina
endeavors to make plaintiff whole in an underinsured motorist
case, because: (1) plaintiff insurer, by the Act and the present pol-
icy, is subrogated to defendants' right to recover from any legally
responsible party; and (2) contrary to defendants' contention that
insureds will be kept hanging in limbo as they are forced to sue
any and all possible persons or organizations for years before
they could recover their UIM benefits, there is no entitlement or
subrogation by the UIM carrier to proceeds from legally respon-
sible parties unless payment to the insured was made when the
underinsured vehicle's limits were exhausted or otherwise in
accordance with the Act.

## 2. Costs— attorney fees—common fund—reduction of recovery

The trial court did not abuse its discretion by finding that
plaintiff UIM insurer's subrogation recovery should be reduced
by its proportionate share of attorney fees incurred by defend-
ants in the prosecution of the dram shop actions, because: (1) the
settlement from the dram shop lawsuits constituted a common
fund for the purpose of shifting attorney fees; (2) otherwise,
plaintiff will acquire its money without the accompanying
costs associated with it; and (3) while defendants may have
rebuffed plaintiff's efforts to take over the suit, principles of
fairness still hold.

Appeal by defendants from judgment entered 13 March 2002 by Judge Quentin Sumner in Pasquotank County Superior Court. Heard in the Court of Appeals 12 February 2003.

*Baker, Jenkins & Jones, P.A., by Ronald G. Baker and Amy L. Elliott, for plaintiff appellee/cross-appellant.*

*Jones Martin Parris & Tessener Law Offices, P.L.L.C., by Hoyt G. Tessener and Elizabeth C. Todd for Blong, Geigers, Lawler, and Horner defendant-appellants; and C. Everett Thompson, II, for McGrady defendant appellant.*

*Bryce O. Thomas, Jr.; and Mark L. Killian, Amicus Curiae of the N.C. Academy of Trial Lawyers.*

McCULLOUGH, Judge.

The facts surrounding this appeal stem from an automobile accident that occurred on 6 April 1999. While on vacation in Kill Devil Hills, five teenagers were traveling in a single vehicle: Megan Ann Blong, Amanda Marie Geiger, Shana Marissa Lawler, Angela Nicole McGrady, and Michael Horner. As their vehicle entered an intersection with Highway 158 at approximately 3:00 o'clock p.m., it was hit by another vehicle driven by Melissa Lynn Marvin. Ms. Marvin had been drinking since noon and ran the red light at the intersection. Of the five passengers, only Michael Horner survived. Ms. Marvin was convicted at trial of four counts of second-degree murder and one count of assault with a deadly weapon. Her conviction was affirmed by this Court in an unpublished opinion, *State v. Marvin*, 149 N.C. App. 490, 562 S.E.2d 469 (2002). Ms. Marvin remains in the custody of the Department of Corrections.

This appeal addresses the insurance settlements arising from the accident. Ms. Marvin's automobile liability insurance carrier tendered its limits of $50,000.00 to the victims and their families almost immediately after the accident. This amount was inadequate to compensate the victims and their families. Plaintiff Farm Bureau waived any subrogation rights as to Ms. Marvin.

Subsequently, defendants filed suit against the bars that served alcohol to Ms. Marvin. As mentioned above, Ms. Marvin had been drinking the day of the accident, and her blood alcohol level was .21 approximately five hours after the accident. She had several drinks at two local bars. It was on this information that lawsuits were filed on

FARM BUREAU INS. CO. OF N.C., INC. v. BLONG

[159 N.C. App. 365 (2003)]

behalf of the five passengers against the businesses that served Ms. Marvin. In fact, there were two "dram shop" lawsuits filed, contending that these businesses were in part responsible for the accident due to their negligence in serving alcohol to an already intoxicated person. *See* N.C. Gen. Stat. § 28A-18-1, *et seq.* (2001). One was filed by defendant Michael McGrady in United States District Court, Eastern District of North Carolina on 23 August 2000. The second was filed by the rest of defendants in the Dare County Superior Court on 12 September 2000.

Meanwhile, defendants in this case also sought further compensation from their own insurance coverage. At the time of the accident, each of the families had underinsured motorist (UIM) coverage. UIM exists to compensate the insured in the event the insured is injured by another with inadequate coverage of their own.

Of particular importance for the present appeal, Shana Lawler was insured under an automobile insurance policy issued by plaintiff Farm Bureau Ins. Co. of N.C., Inc., to her parents. This policy provided for UIM in the amount of $100,000.00 per person/$300,000.00 per accident. According to defendant Brenda Lawler, Administratrix for the Estate of Shana Lawler, they were forced by plaintiff to file a civil suit against Ms. Marvin to trigger their UIM coverage. Once triggered, plaintiff paid the full amount it owed under the policy ($250,000.00): $90,000.00 was paid to defendant Lawler and defendant Blong each; $23,333.33 was paid to defendants Geiger, McGrady, and the Horners (collectively) each. Once plaintiff's limits were tendered, defendant Lawler's suit against Ms. Marvin was abandoned.

Before paying the limits on the Lawler UIM policy, however, plaintiff informed defendant Lawler that plaintiff would seek an offset of its UIM payments by any amounts recovered in the dram shop actions. The parties apparently agreed to disagree about who was entitled to what, and the payments were made and accepted without prejudice to plaintiff's right to seek a determination of its subrogation rights. In addition, plaintiff claims that it sought to provide counsel to assist in the prosecution of the dram shop action, but was refused.

Eventually, the dram shop actions settled during court-ordered mediation for sums in excess of plaintiff's UIM payments to defendants. Thereafter, on 9 May 2001, plaintiff brought this suit pursuant to the Declaratory Judgment Act, N.C. Gen. Stat. §§ 1-253 to 1-267 (2001). The suit presented the following matter to the trial court:

15. The Plaintiff is informed and believes that the Defendants contend that Plaintiff is not subrogated to the Defendants' rights to recover in the pending dram shop lawsuits to the extent of the payments made by Plaintiff under the Lawlers' underinsured motorist policy.

16. The Plaintiff requests that this Court declare the right of Plaintiff to be subrogated to the rights of the Defendants to recover in the pending dram shop lawsuits . . . to the extent of the payments made by Plaintiff to Defendants under the Lawler's underinsured motorist policy.

The matter was considered by Judge Quentin Sumner, and judgment was entered on 13 March 2002. The trial court held:

Based on the foregoing undisputed facts, the language in the [defendant Lawler's] insurance policy and the provisions of G.S. 20-279.21(b) (3) and (4) the Court concludes as a matter of law that the Plaintiff is subrogated to the rights of the Defendants with respect to their dram shop claims and is entitled to be reimbursed, to the extent of its payments, from the proceeds of the settlements of those claims.

In addition, the trial court found as fact:

13. Attorneys for the Defendants provided valuable services in recovering from the Dram Shops. As a result of the work of the attorneys, Plaintiff should pay its percentage of attorney's fees and expenses.

The trial court ordered that plaintiff "is entitled to be, to the extent of its payments, reimbursed from the proceeds of the settlements of those lawsuits less Plaintiff's proportionate share of attorney's fees and expenses." All parties appeal from the judgment.

Defendants assign as error the trial court's finding that plaintiff was entitled to be subrogated to the rights of the original plaintiffs in their independent dram shop settlement.

Plaintiff assigns as error the trial court's finding that the plaintiff's subrogation rights to defendants' recovery in their dram shop actions shall be reduced by plaintiff's proportionate share of attorneys' fees incurred by defendants in the prosecution of those actions.

I.

[1] Defendants contend that the trial court erred by finding for plaintiff even though the UIM policy at issue and the Financial

Responsibility Act are silent on the issue, and the stated public policy of North Carolina endeavors to make the plaintiff whole in an underinsured motorist claim.

Defendants argue that the Financial Responsibility Act (the Act), particularly the sections dealing with uninsured and underinsured motorist coverages is silent on the present issue. N.C. Gen. Stat. §§ 20-279.1 through -279.39 (2001). We disagree.

The Act "is a remedial statute and the underlying purpose is the protection of innocent victims who have been injured by financially irresponsible motorists." *See Haight v. Travelers/Aetna Property Casualty Corp.*, 132 N.C. App. 673, 678, 514 S.E.2d 102, 106, *disc. review denied*, 350 N.C. 831, 537 S.E.2d 824 (1999); *Sanders v. American Spirit Ins. Co.*, 135 N.C. App. 178, 181, 519 S.E.2d 323, 325 (1999). The terms of the Act are written into every North Carolina automobile liability policy, and where the terms of a policy conflict with those of the Act, the Act will prevail. *See Sanders*, 135 N.C. App. at 183, 519 S.E.2d at 326. In addition, the Act is to be liberally construed in order that its beneficial purpose is accomplished. *Id.* at 181, 519 S.E.2d at 325. This purpose is " 'best served when the statute is interpreted to provide the innocent victim with the *fullest possible protection*' " from the negligent acts of an underinsured motorist. *Id.* at 181-82, 519 S.E.2d at 325 (citation omitted).

The Act defines an underinsured motor vehicle as

a highway vehicle with respect to the ownership, maintenance, or use of which, the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of underinsured motorist coverage for the vehicle involved in the accident and insured under the owner's policy.

N.C. Gen. Stat. § 20-279.21(b)(4) (2001).

The Act then states the triggering language:

Underinsured motorist coverage is deemed to apply when, by reason of payment of judgment or settlement, all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance, or use of the underinsured highway vehicle have been exhausted.

*Id.*

Thus, to trigger UIM coverage, the limits applicable to the under-insured vehicle must be exhausted. Exhaustion is defined by the Act as follows:

> Exhaustion of that liability coverage for the purpose of any single liability claim presented for underinsured motorist coverage is deemed to occur when either (a) the limits of liability per claim have been paid upon the claim, or (b) by reason of multiple claims, the aggregate per occurrence limit of liability has been paid. Underinsured motorist coverage is deemed to apply to the first dollar of an underinsured motorist coverage claim beyond amounts paid to the claimant under the exhausted liability policy.

*Id.*

> Further, to determine the amount of UIM coverage available

> the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant under the exhausted liability policy or policies and the limit of underinsured motorist coverage applicable to the motor vehicle involved in the accident.

*Id.*

The Marvin vehicle was an underinsured vehicle. As stated in the facts, the "sum of the limits of liability under all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance, or use of the underinsured highway vehicle," specifically the Marvin policy, were indeed less than the available limits under the Lawler UIM coverage. The type of policies being referred to in (b)(4), ones providing coverage for bodily injury caused by the "ownership, maintenance or use" of the underinsured vehicle, are motor vehicle policies. *See* N.C. Gen. Stat. § 20-279.21(b)(1) and (2) (2001). Marvin's insurer paid out its entire liability coverage, thereby exhausting her coverage. According to the Act, this being the only applicable policy, UIM coverage was "deemed to apply." This is presumably why plaintiff paid out its UIM limits. As per the Act, the $50,000.00 paid by Marvin's insurer was subtracted from the Lawler UIM limit of $300,000.00, coming to the total amount of coverage of $250,000.00. This amount was then distributed amongst defendants.

The inquiry still remaining is how to treat the proceeds of the settlement of defendants with the dram shops. Plaintiff contends that the Act does indeed give them rights to the proceeds.

Plaintiff's claim comes from the following provisions. The UIM portion of the Act, N.C. Gen. Stat. § 20-279.21(b)(4), makes the provisions of the uninsured portion of the Act, N.C. Gen. Stat. § 20-279.21(b)(3), specifically applicable to it. *See* N.C. Gen. Stat. § 20-279.21(b)(4). Section (b)(3) contains the following provision:

> In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of coverage, *the insurer making payment shall, to the extent thereof, be entitled to the proceeds of any settlement for judgment resulting from the exercise of any limits of recovery of that person against any person or organization legally responsible for the bodily injury for which the payment is made,* including the proceeds recoverable from the assets of the insolvent insurer.

N.C. Gen. Stat. § 20-279.21(b)(3) (2001) (emphasis added).

Defendants contend that this section of N.C. Gen. Stat. § 20-279.21(b)(3) only refers to the proceeds of the insured's action against the owner/operator of the motor vehicle involved in the collision, i.e., the suit against Marvin that was abandoned and which plaintiff waived its subrogation rights. Defendant argues that provision does not include all liability actions, including those maintained against persons wholly separate from the motor vehicle collision, i.e., the dram shops.

The meaning of this section has not been addressed by this Court. The question arose but was not answered in the case of *Silvers v. Horace Mann Ins. Co.*, 90 N.C. App. 1, 11-12, 367 S.E.2d 372, 378 (1988), *modified and remanded,* 324 N.C. 289, 378 S.E.2d 21 (1989) (noting that jurisdictions that have interpreted similarly worded statutes are split on whether this provision gives an insurer a right to subrogation in the UIM context). In that case, an insurer was claiming a right of subrogation against the negligent driver of the motor vehicle. *Id.* However, this Court focused on the phrase "subject to the terms and conditions of such coverage" from the aforementioned section. N.C. Gen. Stat. § 20-279.21(b)(3). According to the policy in effect, the insurer had waived any rights to subrogation, and the question was left unanswered. *Silvers,* 90 N.C. App. at 12-13, 367 S.E.2d at 378-79.

In the present case, the policy does not present the same impediment. In the UIM portion of the policy, subheading "Limit of Liability" provides that "[a]ny amount otherwise payable for damages

under this coverage shall be reduced by all sums paid because of the **bodily injury** or **property damage** by or on behalf of persons or organizations who may be legally responsible." This tracks the language in (b)(3). In the General Provisions portion of the policy, subheading "Our Right to Recover Payment" provides that

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after the loss to prejudice them.

However, our rights under this paragraph do not apply to:

. . . .

2. Part C2 [UIM], against the owner or operator of an **underinsured motor vehicle** if we have been given written notice in advance of a settlement and fail to advance payment in an amount equal to the tentative settlement within 30 days following receipt of such notice[.]

The contingency in the latter provision has not been alleged, therefore no impediment from the policy exists. Further, this same provision continues:

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. *Hold in trust* for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

(Emphasis added.)

Plaintiff insurer, by the Act and the present policy, is subrogated to defendants' right to recover from any legally responsible party.

As a rule of construction, it is fundamental that the intent of the legislature controls in determining the meaning of a statute. Legislative intent may be determined from the language of the statute, the purpose of the statute, " 'and the consequences which would follow [from] its construction one way or the other.' "

FARM BUREAU INS. CO. OF N.C., INC. v. BLONG

[159 N.C. App. 365 (2003)]

Nonetheless, if a statute is facially clear and unambiguous, leaving no room for interpretation, the courts will enforce the statute as written.

*Haight,* 132 N.C. App. at 675, 514 S.E.2d at 104 (citations omitted).

The plain language of the policy and the Act appears to allow for the type of subrogation that plaintiff claims. The language from § 20-279.21(b)(3), "any person or organization legally responsible," is very broad. By virtue of the dram shop lawsuits, defendants were seeking to make the two bars responsible, at least in part, for what happened on 6 April 1999.

We are mindful the UM/UIM statute is one that is remedial in nature. *See Williams v. Holsclaw,* 128 N.C. App. 205, 212-13, 495 S.E.2d 166, 171 (1998). However, the clear language before us compels this result. Therefore, we affirm the trial court's judgment as it pertains to allowing plaintiff to be reimbursed to the extent of its payments.

The fears espoused by defendant that the intent of the UIM statute will be foiled and destroyed as we know it missed the mark. This case is an example of how the procedure may play out. The UIM carrier pays out what it owes its insured after judgment or settlement has been reached with the underinsured driver. If there are parties that exist that may be made "legally responsible" through proper court channels, the UIM insurer may pursue them via their subrogation rights. As it happened here, such an offer was made, but refused by the insured. As the structure of the Act and definition of exhaustion provide, a UIM carrier cannot require an insured to pursue these parties before exhaustion can occur. Recovered proceeds from legally responsible parties can only flow back to the UIM carrier after the fact. There is no entitlement or subrogation by the UIM carrier to those proceeds unless payment to the insured was made when the underinsured vehicle's limits were exhausted, or otherwise in accordance with the Act. Money paid out by UIM insurer is to be recouped, not reduced then paid out. The fear of defendants that insureds will be kept hanging in limbo as they are forced to sue any and all possible persons or organizations for years before they could recover their UIM benefits are unfounded. Such actions on the part of UIM carriers would be in the realm of bad faith.

This assignment of error is overruled.

## II.

**[2]** Plaintiff assigns as error the trial court's finding and order that its recovery be reduced by its proportionate share of attorneys' fees incurred by defendants in the prosecution of the dram shop actions.

Plaintiff points out that there is no statutory provision providing for such a discretionary award. Plaintiff also stresses that an offer was made to defendants by it to intervene and assist in the prosecution of the dram shop action which was rejected by defendants. Thus, plaintiff had no say in choice of counsel or compensation thereof. It was instead at the mercy of defendants' choice of counsel.

Defendants contend that the trial court was authorized to reduce the offset by a proportion of attorneys' fees by the "common-fund doctrine." *See Bailey v. State of North Carolina*, 348 N.C. 130, 159-60, 500 S.E.2d 54, 71-72 (1998), *disc. review allowed*, 351 N.C. 350, 543 S.E.2d 122 (2000); *Horner v. Chamber of Commerce*, 236 N.C. 96, 97-98, 72 S.E.2d 21, 22 (1952).

> The "common-fund doctrine" is a long-standing exception to the general rule in this country that every litigant is responsible for his or her own attorney's fees. Attorney's fees are ordinarily taxable as costs only when authorized by statute. However, in *Horner*, the leading North Carolina case regarding the common-fund doctrine, this Court recognized:
>
> > [T]he rule is well established that a court of equity, or a court in the exercise of equitable jurisdiction, may in its discretion, and without statutory authorization, order an allowance for attorney fees to a litigant who at his own expense has maintained a successful suit for the preservation, protection, or increase of a common fund or of common property, or who has created at his own expense or brought into court a fund which others may share with him.
>
> > . . . .
>
> The primary problem faced by courts in determining whether a shifting of fees is appropriate under the common-fund doctrine is deciding whether some finite benefit flows to a determinable group of plaintiffs.

*Bailey*, 348 N.C. at 159-60, 500 S.E.2d at 71-72 (citations omitted).

**FARM BUREAU INS. CO. OF N.C., INC. v. BLONG**

[159 N.C. App. 365 (2003)]

We have found nothing in *Horner* or *Bailey* that would restrict the common-fund doctrine from being applied in the present case on account of their only being one beneficiary to the fund consisting of the settlement proceeds. In fact, this fact eases much of the determination. *See id.* at 161, 500 S.E.2d at 72 ("[T]he common-fund doctrine has been appropriately applied in cases (1) where the classes of persons benefitting from the lawsuit were small and easily identifiable, (2) where the benefits could be traced accurately, and (3) where the costs could be shifted to those benefitting with some precision."). In the present case, defendants have created, at their own expense, a fund in which plaintiff will share.

We note that this case was, at least in part, equitable in nature. While plaintiff's complaint asked for a determination of rights, the trial court's order fashioned an equitable remedy. This remedy was creating what essentially is a constructive trust for the proceeds of the settlement in the amount of $250,000.00. As per the applicable policy, such funds were to be held by the insured in trust for the insurer.

Thus, we are persuaded that the settlement from the dram shop lawsuits indeed constitutes a common fund for the purpose of shifting attorneys' fees. Otherwise, plaintiff will acquire their money without the accompanying costs associated with it. While we realize that defendants may have rebuffed plaintiff's efforts to take over the suit, these principles of fairness still hold. Even in light of the facts stressed by plaintiff, we believe that the trial court was within its discretion to reduce plaintiff's recovery. *See Hoskins v. Hoskins*, 259 N.C. 704, 707, 131 S.E.2d 326, 328 (1963).

This assignment of error is overruled.

Affirmed.

Judges TYSON and CALABRIA concur.