In the Matter of STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent, v ANGELINA GRAY, Appellant. [891 NYS2d 151]—

On March 9, 2005 the appellant was operating a motor vehicle (hereinafter the subject vehicle) insured by the petitioner when the subject vehicle was involved in an accident in Hempstead. According to the police accident report, the subject vehicle was registered in North Carolina to the appellant. The motor vehicle with which the subject vehicle collided (hereinafter the tortfeasor's vehicle) was registered in New York.

The petitioner issued a policy of automobile insurance in North Carolina (hereinafter the subject policy) to nonparty Wallace C. Gray, the appellant's husband (hereinafter the named insured), covering the subject vehicle. The declarations page of the subject policy (hereinafter the declarations) which covered the time period within which the accident occurred indicated that the limits of liability for bodily injury were $100,000 per person/$300,000 per occurrence. The declarations also indicated that the subject policy contained uninsured motorist coverage "U."

The appellant, with the petitioner's consent, settled a claim against the tortfeasor for the sum of $25,000, the bodily injury limits of the tortfeasor's policy of insurance issued by AIG National Insurance Co. Subsequently, the petitioner advised the appellant that since the subject policy contained only uninsured but not underinsured motorist coverage, it was closing its file because there was no further claim to adjust. Thereafter, the appellant made a demand to arbitrate her claim for uninsured/underinsured motorist benefits under the subject policy. The petitioner commenced this proceeding to permanently stay the arbitration. The Supreme Court granted the petition and permanently stayed the arbitration. We reverse.

Contrary to the petitioner's contention, the tortfeasor's vehi-

cle was uninsured within the meaning of the subject policy. The uninsured motorist provision therein defines an uninsured motor vehicle as one, inter alia, to which a *"policy applies at the time of the accident; provided its limit for liability is less than the minimum limit specified by the financial responsibility law of North Carolina"* (emphasis added). The subject uninsured motorist provision and, in particular, the definition of an uninsured motor vehicle thereunder, essentially mirrors the language in North Carolina General Statutes § 20-279.21 (b) (3), the uninsured motorist provision of the North Carolina Motor Vehicle Safety and Financial Responsibility Act (hereinafter the Act). The Act defines an "uninsured motor vehicle" as one "to which there is no bodily injury liability insurance and property damage liability insurance in at least the amounts specified in subsection (c) of [NC] G.S. 20-279.5." (*Id.*) North Carolina General Statutes § 20-279.5 contains the "amounts specified" to which the policy limits of the tortfeasor's vehicle must be compared in order to determine whether that vehicle is uninsured.

Notably, North Carolina General Statutes § 20-279.5 governs the circumstances under which a driver who is involved in an accident in North Carolina must post security. Pursuant thereto, one of the conditions under which an operator of an out-of-state motor vehicle involved in an accident in North Carolina would not be required to post security is if that motor vehicle is covered by a policy of insurance that contains policy limits for bodily injury of not less than $30,000 per person/$60,000 per accident. That amount also mirrors the minimum bodily injury limits required for all vehicles registered in North Carolina (*see* NC Gen Stat § 20-279.21 [b] [2]). Thus, the limits referred to in section 20-279.21 of the Act, to which the policy limits of the tortfeasor's vehicle must be compared in order to determine whether that vehicle is uninsured, are $30,000 per person/ $60,000 per accident.

As the petitioner correctly argues, a vehicle such as the tortfeasor's that is registered in New York is not subject to the financial responsibility laws of North Carolina, and the owner of such a vehicle is not required to purchase minimum bodily injury limits of $30,000/$60,000 coverage in accordance therewith (*see* NC Gen Stat § 20-279.21 [b] [2]). These conclusions, however, do not preclude a determination that such a vehicle is uninsured for purposes of both the Act and the uninsured motorist provision of the subject policy. As applied to vehicles registered outside of North Carolina, the uninsured motorist requirements of the Act were adopted to protect North Carolina

drivers involved in accidents with out-of-state vehicles which may not carry insurance coverage commensurate with the insurance coverage required of drivers in North Carolina (*see generally Proctor v North Carolina Farm Bur. Mut. Ins. Co.*, 324 NC 221, 225, 376 SE2d 761, 763-764 [1989]). The Act is remedial in nature and must be liberally construed, in order to protect "innocent victims who may be injured by financially irresponsible motorists" (*Proctor v North Carolina Farm Bur. Mut. Ins. Co.*, 324 NC at 224, 376 SE2d at 763; *see Liberty Mut. Ins. Co. v Pennington*, 356 NC 571, 573, 573 SE2d 118, 120 [2002]).

Morever, the unambiguous terms of the subject uninsured motorist provision must be construed as written (*see generally Matter of Allstate Ins. Co. [Stolarz—New Jersey Mfrs. Ins. Co.]*, 81 NY2d 219, 225 [1993]). Here, since the tortfeasor's policy limit of $25,000 per person/$50,000 per accident "is less than the minimum limit *specified by* the financial responsibility law of North Carolina" (emphasis added), the tortfeasor's vehicle is deemed to be uninsured under the clear language of the uninsured motorist provision of the subject policy.

Further, contrary to the petitioner's contention that the subject policy does not contain an endorsement for underinsured motorist coverage, the documents submitted in support of the petition failed to demonstrate that the named insured rejected such coverage in accordance with the Act. The governing provision of the Act in effect at the time of the subject accident outlined specific procedures under which underinsured motorist coverage may be rejected by a named insured (*see* NC Gen Stat § 20-279.21 [b] [4] [2003 NC Session Laws 311]). Under that provision, rejection of such coverage was required to be made in writing by the named insured on a form promulgated by the North Carolina Rate Bureau and approved by the North Carolina Commissioner of Insurance (*see* NC Gen Stat § 20-279.21 [b] [4] [2003 NC Session Laws 311]).

Here, the petitioner submitted the original policy application from 1995 (containing no form for the acceptance or rejection of uninsured/underinsured motorist coverage), coupled with the declarations applicable to the policy in effect at the time of the accident, to demonstrate that the named insured, in effect, rejected the underinsured motorist endorsement because it had accepted a policy, upon each renewal, without it. The appellant's acceptance, upon each renewal, of the subject policy containing an uninsured motorist endorsement without the combined underinsured motorist endorsement does not, alone, operate as a rejection of the latter coverage, which is written into it by stat-

ute (see Hoffman v Great Am. Alliance Ins., 166 NC App 422, 427, 601 SE2d 908, 911-912 [2004]; Sanders v American Spirit Ins. Co., 135 NC App 178, 183, 519 SE2d 323, 326-327 [1999]; Lichtenberger v American Motorists Ins. Co., 7 NC App 269, 273-275, 172 SE2d 284, 287-289 [1970]). Thus, the petitioner's submissions failed to demonstrate that the named insured rejected underinsured motorist coverage on a form that strictly complied with the statute.

Accordingly, the subject policy is deemed to include underinsured motorist coverage in the absence of evidence that such coverage was offered and rejected in accordance with the version of the statute applicable at the time of the accident (see Sanders v American Spirit Ins. Co., 135 NC App at 181, 519 SE2d at 324-325).

In light of the foregoing, we need not reach the parties' remaining contentions. Skelos, J.P., Eng, Belen and Austin, JJ., concur.